*566
 
 OPINION OF THE COURT
 

 Smith, J.
 

 The issue here is whether defendants’ failure to pay taxes on motor fuel imported from New Jersey to New York constitutes larceny from New York State on the theory that New York was the owner of the unpaid taxes. We conclude that it does not.
 

 In March 1997, defendants William S. Nappo, William K. Nappo and John Rocco were indicted, along with five additional individuals, and charged, in the first three counts, with enterprise corruption (Penal Law § 460.20), conspiracy in the fourth degree (conspiring to commit grand larceny in the first degree) (Penal Law § 105.10 [1]) and grand larceny in the first degree (Penal Law § 155.42), as well as a host of Tax Law offenses, including violation of Tax Law § 1812. The full 12-count indictment alleged defendants’ involvement in a scheme to import motor fuel from New Jersey to New York without filing reports or paying “motor fuel taxes” as required by the New York Tax Law.
 

 County Court dismissed counts one, two and three of the indictment, with leave to resubmit the charges to another Grand Jury. On the People’s appeal, the Appellate Division reinstated both the larceny and conspiracy charges, stating, “The Grand Jury evidence is sufficient to establish a prima facie case that [defendants] withheld property from its rightful owner, i.e., the State of New York, as defined by the Penal Law” (261 AD2d 558, 559). A Judge of this Court granted defendants leave to appeal. We now reverse and dismiss the larceny and conspiracy charges.
 

 The People contend that defendants were required to pay taxes on the importation and distribution of motor fuel in New York State and that their failure to do so constituted a larceny of property owned by the State of New York. Defendants counter that, as a matter of law, the State is not the “owner” of the uncollected taxes.
 

 The State of New York is not an owner, as defined by the Penal Law, of taxes required to be paid for the importation and distribution of motor fuel. The taxes due were not the property of the State prior to their remittance. Accordingly, defendants did not steal money that belonged to New York State, but rather failed to make payments of taxes which were their personal obligations under the Tax Law
 
 (see, People v Zinke,
 
 76 NY2d 8, 12).
 

 Our conclusion is supported both by the Penal Law and by our precedents. Penal Law § 155.05 (1) defines larceny as steal
 
 *567
 
 ing property by taking, obtaining or withholding it from an owner thereof. An “owner” is defined as “any person who has a right to possession [of property] superior to that of the taker, obtainer or withholder” (Penal Law § 155.00 [5]).
 

 In
 
 People v Jennings
 
 (69 NY2d 103, 126-128), we reversed a conviction for larceny when an insured retained insurance proceeds rather than distributing them to clients who had been victims of a warehouse robbery. We held that the clients were not the owners of the proceeds, and thus the defendant could not be convicted of larceny for failure to remit the proceeds to them. In
 
 People v Yannett
 
 (49 NY2d 296), this Court held that nursing home residents who had paid a higher private rate before a determination that they were eligible for a lower Medicare rate were not owners of the difference between the rates. Thus, the defendant nursing home operator was not liable for a larceny for failing to refund the difference
 
 (see also, People v Wilson,
 
 93 NY2d 222 [because a mall security guard had no ownership interest in stolen boots, the defendant could not be convicted of stealing boots from him]). Here, as in
 
 Jennings, Yannett
 
 and
 
 Wilson,
 
 defendants were not in possession, by trust or otherwise, of monies owned by the State.
 

 The People’s reliance on Tax Law § 1817 (k), which overruled the result in
 
 People v Valenza
 
 (60 NY2d 363, 367), is misplaced. In
 
 Valenza,
 
 we held that “[a] vendor who collects sales taxes from customers, but fails to remit the sales taxes due the State under circumstances indicating an intent to permanently deprive the State of the taxes, may not be subjected to criminal prosecution for larceny by embezzlement.”
 

 While Tax Law § 1817 (k) now specifically authorizes prosecution under the Penal Law for failure to remit to the State sales taxes that have previously been collected from consumers, it does not follow that defendants may be prosecuted here for larceny or conspiracy. The People’s position that failure to pay taxes due is equivalent to the failure to remit collected sales taxes is untenable. A seller who collects sales taxes holds money in trust for the State (Tax Law § 1817 [k]). Thus, the State may be deemed the “owner” of “collected” but unremitted sales taxes. Here, by contrast, defendants were obligated to pay motor fuel taxes upon the importation or distribution of motor fuel
 
 (see,
 
 Tax Law §§ 284, 284-a, 1102;
 
 Herzog Bros. Trucking v State Tax Commn.,
 
 72 NY2d 720, 723), but their tax liability did not depend upon the collection of taxes from consumers. Moreover, defendants did not hold any funds in trust for the State.
 

 
 *568
 
 Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed and counts two (conspiracy in the fourth degree) and three (grand larceny in the first degree) of the indictment dismissed.
 

 Chief Judge Kaye and Judges Bellacosa, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order, insofar as appealed from, reversed, etc.