[737 NYS2d 96]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEX CONIGLIARO, Appellant.

Second Department, January 22, 2002

**APPEARANCES OF COUNSEL**

*Meissner, Kleinberg & Finkel, L. L. P.,* New York City (*Ronald M. Kleinberg, Richard A. Finkel* and *Laurel J. Weinberg* of counsel), for appellant.

*Richard A. Brown, District Attorney,* Kew Gardens (*Linda Cantoni* and *Alyson J. Gill* of counsel), for respondent.

**OPINION OF THE COURT**

GOLDSTEIN, J.

The primary issue before this Court is whether the crime of enterprise corruption is sufficiently pleaded in the indictment (*see, People v Iannone,* 45 NY2d 589, 600-601). The appellant focuses on two elements: whether a criminal enterprise is sufficiently alleged in the indictment and whether a pattern of conduct is properly alleged.

The indictment charges that the appellant and his codefendants (*see, People v Barbone,* 290 AD2d 512), are members of the "Conigliaro Gambling Organization," that operated an unlawful sports betting and policy gambling operation in Queens, Kings, and Richmond Counties. The enterprise employed a "bookmaker" who oversaw the operation and a "controller" who conducted its day-to-day business. The "controller" also maintained account information of the various bettors. Additionally, "clerks" accepted bets over the telephone, and "runners" met with bettors for the purpose of settling their weekly accounts.

The indictment further alleges that the appellant and his codefendants engaged in multiple "pattern acts," including (1) conspiracy in the fifth degree, i.e., a conspiracy to engage in promoting gambling in the first degree during the period of August 15, 1996, until November 7, 1997, (2) promoting gambling in the first degree by accepting more than five bets totaling more than $5,000 on different dates in the Counties of Queens, Kings, and elsewhere, and (3) possession of gambling records and attempted possession of gambling records in the first degree in Queens and Richmond Counties, and attempted possession of gambling records in Queens and Kings Counties.

Penal Law § 460.10 (3) defines "criminal enterprise" in the following manner:

> "a group of persons sharing a common purpose of engaging in criminal conduct, associated in an ascertainable structure distinct from a pattern of criminal activity, and with a continuity of existence, structure and criminal purpose beyond the scope of individual criminal incidents."

The appellant contends that the Conigliaro Gambling Organization cannot constitute a criminal enterprise since its crimi-

nal activities were confined to gambling. This interpretation is contrary to case law in this Court (*see, People v Iadarola,* 222 AD2d 454, *lv denied* 87 NY2d 903, *cert denied* 517 US 1209), and is not supported by legislative intent. In *People v Iadarola* (*supra,* at 455), this Court held that the defendant's conviction of enterprise corruption, upon a jury verdict, was based upon legally sufficient evidence in that the defendant participated, along with his brother and others, in a "pattern of illegal gambling activity from November 1988 to July 1991." In enacting Penal Law article 460 the Legislature noted in its legislative findings that one of the evils to be addressed was "illegal enterprises" which engaged in such criminal endeavors as "syndicated gambling" (Penal Law § 460.00).

In *People v Nappo* (261 AD2d 558, 559, *revd on other grounds* 94 NY2d 564), relied upon by the appellant, this Court upheld the dismissal of the count of the indictment charging the defendants therein with enterprise corruption on the ground that the evidence before the Grand Jury failed to establish that the defendants were engaged in "any structure, business, activity, or continuity of criminal purpose beyond the scope of the criminal incidents alleged in the indictment." In that case, the defendants William S. Nappo and William K. Nappo formed a corporation for the purpose of importing motor fuel oil into the State and conspired to evade payment of State sales taxes. In that case, the People failed to establish either an "existing organized crime entity" or any continuity of existence wherein the said entity was capable of continuing without the participation of William S. Nappo and William K. Nappo.

In the instant case, however, the indictment alleges both an "existing organized crime entity" and a structure sufficient to continue even in the absence of the appellant.

The appellant further contends that the pattern acts, as alleged, are insufficient since "acts that constitute a 'single criminal venture' do not establish a 'pattern of criminal activity.'"

Penal Law § 460.10 (4) defines "pattern of criminal activity" as three or more criminal acts committed within 10 years of the commencement of the criminal proceeding which:

> "(b) are neither isolated incidents, nor so closely related and connected in point of time or circumstance of commission as to constitute a criminal offense or criminal transaction, as those terms are defined in section 40.10 of the criminal procedure law; and

> "(c) are either: (i) related to one another through a

common scheme or plan or (ii) were committed, solicited, requested, importuned or intentionally aided by persons acting with the mental culpability required for the commission thereof and associated with or in the criminal enterprise."

CPL 40.10 (2), contained in CPL article 40 relating to statutory prohibitions against double jeopardy, defines "criminal transaction" as:

"conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture."

The appellant argues that once there is a criminal enterprise, all criminal acts perpetrated by the enterprise may, by definition, constitute integral parts of a single criminal venture. Therefore, by definition, these acts cannot constitute a pattern of criminal activity. Pursuant to this analysis, acts satisfying the portion of the definition of "pattern of criminal activity" set forth in Penal Law § 460.10 (4), i.e., acts which are "related to one another through a common scheme or plan" would be too closely related to constitute a "pattern of criminal activity."

This Court has held that "[i]n order to determine whether or not two acts are part of the same criminal transaction, the court must look at the nature of the crime, as well as the underlying facts (i.e., victim, time, place and date)" (*People v Griffin*, 137 AD2d 558, 559). In the instant case, the indictment alleges various gambling offenses occurring on different dates in different counties.

Contrary to the appellant's contention, specialization in one type of criminal activity does not preclude prosecution for enterprise corruption. In *People v Barone* (221 AD2d 553), the defendant was convicted of enterprise corruption based upon "his participation in a defrauding scheme for the benefit of an organized crime family." Other types of criminal conduct were alleged, but the defendant was acquitted of those charges. Nonetheless, this Court upheld the defendant's conviction.

In support of his argument that the indictment does not allege a pattern of criminal activity, the appellant cites *People v Abbamonte* (43 NY2d 74, 84), wherein the Court of Appeals

held that the defendants' substantive drug offenses and conspiracy constituted a single criminal venture and a single criminal transaction within the meaning of CPL 40.10. In that case, the defendants were previously prosecuted in Federal court for conspiracy to violate Federal drug laws from May 1971 until April 1973. The Court of Appeals held that a State prosecution for substantive drug crimes committed in that period was barred by double jeopardy in view of the fact that the substantive drug crimes were part of the same criminal venture as the conspiracy.

Similarly, in *People v Helmsley* (170 AD2d 209), the defendant was tried in Federal court for conspiracy to evade taxes by funneling personal expenses through business entities controlled by her and her husband. Thereafter, the defendant was prosecuted in State court for substantive crimes of filing false tax returns. The Appellate Division, First Department, affirmed an order dismissing numerous counts of the State indictment, as barred by double jeopardy, on the ground that those substantive crimes could have been charged as overt acts in the prior all-encompassing conspiracy prosecution.

However, in *People v Vesprey* (183 AD2d 212, 216), the Appellate Division, First Department, noted that successive commissions of the same type of crime, using the same modus operandi, do not constitute a single criminal transaction. The crimes alleged in *Vesprey* involved the use of stolen credit cards. The Appellate Division, First Department, noted that a defendant who specializes in the same type of crime should not be insulated from successive prosecutions for separate and subsequent offenses. Thus, prosecution of the defendant in Federal court for conspiracy to purchase stolen credit cards did not bar prosecution in State court for fraudulent use of different credit cards. The *Vesprey* Court distinguished the *Helmsley* case on the ground, *inter alia,* that there was a single objective in *Helmsley*, namely, renovation of the *Helmsley* residences as a business expense. In *Vesprey*, on the other hand, the crimes charged involved entirely different and discrete acts with no single purpose or overall objective, and with different victims.

In *People v Nappo (supra)*, this Court stated that the Grand Jury evidence, in addition to being insufficient to establish a criminal enterprise, was also insufficient to establish a pattern of criminal activity. Since no criminal enterprise was present in *Nappo*, this statement was unnecessary to the decision. Moreover, the criminal conduct in *Nappo* involved one objective, evading State taxes. A scheme to evade State taxes for a

discrete period has been deemed one transaction for the purposes of CPL 40.10 (*see, Matter of Sharpton v Turner*, 170 AD2d 43).

In the instant case, however, while the conduct alleged involved gambling in general, the specific acts involved different courses of conduct which violated different Penal Law provisions and which occurred in different counties and involved multiple bettors.

There can be crimes which involve multiple criminal steps with basically one purpose. For example, defrauding a single victim through a series of transactions (*see, People v Nappo, supra; People v Helmsley, supra*), or filing a false insurance claim, which would involve both larceny and falsifying business records (*see, People v Scarantino*, 167 Misc 2d 388, 390).

While every crime involving multiple steps does not involve a "criminal enterprise," this case involves an organization which committed multiple discrete crimes. The only connection these crimes had were that they constituted violations of similar provisions of the Penal Law. Those crimes constitute separate criminal transactions which establish a pattern of criminal activity.

In view of the foregoing, the crime of enterprise corruption is sufficiently pleaded in the indictment.

The defendant's remaining contentions are without merit.

Accordingly, the judgment is affirmed.

FRIEDMANN, J. (concurring in part and dissenting in part).

Although I agree with my colleagues in the majority that the indictment sufficiently alleges that the appellant was a member of a "criminal enterprise" (Penal Law § 460.10 [3]), I disagree with their conclusion that it sufficiently alleged that the appellant participated in a "pattern of criminal activity" (Penal Law § 460.10 [4]). Therefore, I would modify the judgment by reversing the appellant's conviction of enterprise corruption and dismissing that count of the indictment.

In order to satisfy the statutory definition of a "pattern of criminal activity," a defendant's conduct must "constitut[e] three or more criminal acts that," *inter alia,* "are neither isolated incidents, nor so closely related and connected in point of time or circumstance of commission as to constitute a criminal offense or criminal transaction, as those terms are defined in [CPL 40.10]" (Penal Law § 460.10 [4] [b]). In relevant part, CPL 40.10 defines a "criminal transaction" as conduct "which

establishes at least one offense, and which is comprised of two or more or a group of acts" which are "so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture" (CPL 40.10 [2] [b]).

In this case, the indictment charged the appellant, and others, with, among other things, one count of enterprise corruption in connection with his participation in the Conigliaro Gambling Organization. With respect to the required "pattern of criminal activity," the indictment alleged that the appellant engaged in some 40 pattern acts. Of these 40 pattern acts, the first was the commission of the crime of conspiracy in the fifth degree (Penal Law § 105.05 [1]), 38 of the pattern acts were instances of promoting gambling in the first degree (Penal Law § 225.10 [1]), and there was one instance of possession of gambling records in the first degree (Penal Law § 225.20 [1]).

In my opinion, the acts alleged in the indictment were so closely related in criminal purpose or objective as to constitute integral parts of a single criminal venture (*see, People v Nappo*, 261 AD2d 558, *revd on other grounds* 94 NY2d 564; *see also, People v Abbamonte*, 43 NY2d 74, 84; *People v Helmsley*, 170 AD2d 209; CPL 40.10 [b]). Here "[t]he criminal transaction was a single persisting criminal enterprise [to acquire money through the operation of an unlawful sports betting and policy gambling enterprise]" (*People v Abbamonte, supra*, at 84). This Court's decision in *People v Nappo (supra)* is instructive.

In *Nappo*, the defendants were charged with enterprise corruption in connection with a scheme to evade taxes by importing motor fuel from New Jersey to New York without paying taxes as required by the New York Tax Law. To this end, and solely for that reason, they formed and operated "Eagle Oil" to purchase the oil. The indictment further alleged that they had participated in some 234 "pattern acts" of criminal activity, all in some way related to their attempt to evade motor fuel taxes in violation of the New York Tax Law. In affirming that portion of the County Court's order which dismissed the count of the indictment charging the defendants with enterprise corruption, this Court stated, inter alia, that "the Grand Jury evidence was insufficient to establish that the respondents had engaged in a pattern of criminal activity as defined by the enterprise corruption statute" (*People v Nappo, supra*, at 559; *see also, People v Helmsley, supra* [defendant's conduct constituted a single criminal venture to renovate and decorate her homes, partially at the expense of the taxpayers, by falsely claiming personal expenses as business expenses]).

I agree that the defendant's remaining contentions are without merit.

FEUERSTEIN, J. P., and CRANE, JJ., concur with GOLDSTEIN, J.; FRIEDMANN, J., concurs in part and dissents in part in a separate opinion.

Ordered that the judgment is affirmed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings pursuant to CPL 460.50 (5).