Oscar PORCELLI, Petitioner–
Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 01–2496.

United States Court of Appeals,
Second Circuit.

Argued: April 4, 2002.

Decided: Sept. 13, 2002.

Vivian Shevitz, South Salem, NY, for Petitioner–Appellant.

Emily Berger, Assistant United States Attorney, for Alan Vinegrad, United States Attorney for the Eastern District of New York (Susan Corkery on the brief), Brooklyn, NY, for Respondent–Appellee.

Before NEWMAN, KEARSE, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge.

Oscar Porcelli appeals from an order of the United States District Court for the Eastern District of New York (Sifton, *J.*) dismissing his petition for habeas corpus under 28 U.S.C. § 2255 seeking to set aside convictions under the federal mail fraud statute, 18 U.S.C. § 1341, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Porcelli was convicted after a jury trial for his role in filing fraudulent New York State sales tax returns for gas stations owned by his corporations. This is Porcelli's third attempt in this court to overturn the conviction. The first, *Porcelli I,* was his unsuccessful direct appeal from the judgment of conviction. *See United States v. Porcelli,* 865 F.2d 1352 (2d Cir.1989). The second, *Porcelli II,* was his unsuccessful appeal from the district court's denial of his first habeas corpus petition under 28 U.S.C. § 2255. *See Porcelli v. United States,* 964 F.2d 1306 (2d Cir.1992). This appeal is from the district court's denial of his second § 2255 petition. In these decisions, we have repeatedly rejected his claim that under *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the mail fraud statute does not encompass fraudulent schemes designed to reduce sales tax liability. Porcelli now claims that a recent opinion of the New York Court of Appeals, *People v. Nappo,* 94 N.Y.2d 564, 708 N.Y.S.2d 41, 729 N.E.2d 698 (2000), establishes that uncollected and unremitted sales taxes are not the property of the State, and thus undermines the basis for his mail fraud conviction. We again reject his argument and affirm.

## BACKGROUND

The background of this case is described in detail in our January 1989 decision in the appeal from the district court's initial judgment of conviction. *See Porcelli I,* 865 F.2d at 1356–57. We restate it here only briefly.

## A. The Trial

The evidence presented at trial was as follows. In 1973, Porcelli began acquiring and operating a chain of retail gasoline stations in New York. By 1982, he owned seventeen gas stations, each organized as a separate corporation. He ultimately consolidated his holdings into one corporation known as Gaseteria Oil Corporation, Inc. ("Gaseteria"). *See Porcelli I,* 865 F.2d at 1356.

Between 1978 and 1982, Porcelli caused his corporations to underreport the gasoline sales of his stations by approximately $60,000,000, resulting in an underpayment of $4,755,000 of state sales taxes. Porcelli's accountant, Murray Katz, testified that Porcelli repeatedly instructed him to prepare tax returns that understated the sales of gasoline. After receiving notices from state authorities of outstanding tax obligations, Porcelli offered Katz a $200,000 bribe to induce him to plead guilty to filing the false returns and to accept sole responsibility for the frauds. *See id.* at 1356–57.

On September 30, 1987, Porcelli was convicted in the Eastern District of New York (Sifton, *J.*), following a jury trial, of 61 counts of mail fraud and one count of violating RICO. Under the RICO forfeiture provisions, 18 U.S.C. § 1963, the jury also returned a verdict of forfeiture of $4,755,000 representing the unpaid sales taxes, as well as of thirty-four of Porcelli's corporations that were found to be instrumentalities and proceeds of his racketeering activities.

The district court sentenced Porcelli to concurrent split-sentence terms of two-years' imprisonment on each of the sixty-two counts, with all but six months suspended, and probation for five years, and ordered restitution to the State of New York.

## B. Direct Appeal

On his direct appeal, Porcelli contended (1) where the laws of the State of New York did not provide criminal punishment for the failure of a vendor to remit sales taxes, the use of the criminal provisions of the federal mail fraud statute against him violated due process; (2) as to the counts of mail fraud, the mailing by the State to the defendant of blank sales tax return forms was insufficiently related to the defendant's fraud scheme to satisfy the jurisdictional element of use of the mails; (3) following the Supreme Court's decision in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the mail fraud statute did not apply to tax fraud; (4) the evidence was insufficient to satisfy the "enterprise" element for the RICO violation; (5) the forfeiture order was overbroad and was not supported by sufficient evidence; and (6) he received ineffective assistance of counsel.

We rejected all but two of his claims. We agreed that the mailing of blank tax forms by the State tax agency was not sufficiently closely related to the defendant's tax fraud scheme to satisfy the jurisdictional element of use of the mails in furtherance of a scheme to defraud, and accordingly reversed six counts of the mail fraud convictions. *Porcelli I,* 865 F.2d at 1359. We also vacated and remanded portions of the forfeiture order on the grounds that it included certain of Porcelli's "corporations as to which the Government did not prove any direct receipts from the fraudulent gas station corporations." *Id.* at 1356.

Over Judge Newman's dissent, we rejected Porcelli's claim that the federal mail fraud statute does not encompass state sales tax violations. Porcelli argued that under *McNally,* Section 1341 applies only to fraudulent schemes that deprive victims of *vested* property rights and therefore

does not apply to tax fraud because the State has only a claim, and not a vested property right, in the money owed as sales tax. We disagreed. We held that, assuming Porcelli correctly describes the scope of § 1341, his challenge nonetheless fails, as his scheme to file false tax returns deprived the State of a property right—a "chose in action" representing the State's tax claim against the taxpayer. By concealing sales taxes due, Porcelli's scheme sought to deprive the State of its chose in action. *Id.* at 1359–62.

### C. *Porcelli's first § 2255 Petition*

In 1990, Porcelli brought a first petition for habeas corpus under 28 U.S.C. § 2255 before the trial court, based on the New York Court of Appeals's decision in *State v. Barclays Bank of New York, N.A.*, 76 N.Y.2d 533, 561 N.Y.S.2d 697, 563 N.E.2d 11 (1990). He argued that the *Barclays* decision undermined the basis on which his mail fraud convictions had been affirmed in *Porcelli I*. In *Barclays*, an accountant took his clients' checks made payable to the State taxing authorities, forged endorsements, and deposited them in his own account at Barclays Bank. Barclays collected the checks from the drawee banks and permitted the accountant to withdraw proceeds. The State sued Barclays to recover the funds. The New York Court of Appeals affirmed the dismissal of the actions, explaining that, because the checks were never actually or constructively delivered to the State, it "never acquired a property interest in them and cannot be said to have suffered a loss." *Id.* at 540–41, 561 N.Y.S.2d 697, 563 N.E.2d 11.

Porcelli argued that the *Barclays* ruling confirmed his contention that taxes owing to the State were not the property of the State, with the consequence that a fraudulent scheme concealing those tax obligations did not deprive the State of its "property" and, under *McNally*, was not within the scope of § 1341. Judge Sifton

denied the petition and we affirmed. *See Porcelli II*, 964 F.2d at 1308. We read *Barclays* to "focus[ ] on the physical checks, not the taxes they represented" or the "right of the state to be paid sales taxes by a vendor." *Id.* Unlike Porcelli, the bank in *Barclays* was not statutorily obligated under New York law to collect and remit taxes. *Id.*

### D. *Porcelli's Current § 2255 Petition*

On April 26, 2000, Porcelli filed the present § 2255 petition, again before the trial court. He contends that *People v. Nappo*, 94 N.Y.2d 564, 708 N.Y.S.2d 41, 729 N.E.2d 698 (2000), demonstrates that uncollected and unremitted sales taxes are not the State's property. In *Nappo*, the defendants were charged with, *inter alia*, larceny and conspiracy to commit larceny for their involvement in a scheme to import motor fuel from New Jersey to New York without paying or reporting motor fuel taxes due, as required under New York Tax Law. The New York Court of Appeals reversed the larceny convictions on the grounds that, prior to remittance, the State was not the owner of unpaid taxes. Accordingly, defendants did not steal money that belonged to the State and were not guilty of larceny.

Judge Sifton denied Porcelli's petition on alternate grounds. *See Porcelli v. United States*, No. 00–2500 (E.D.N.Y. Jul. 13, 2001). The court initially found that Porcelli, who was neither imprisoned nor on parole or probation at the time of filing his petition, could not satisfy the requirement of being a "prisoner in custody," eligible to bring a petition under § 2255. The court considered whether the petition could stand as a petition for a writ of error *coram nobis*, which does not require the petitioner to be "in custody" but does demand that the petitioner demonstrate continuing legal consequences from his convic-

tion that may be remedied by granting the writ. Finding that the 1987 conviction had no further legal consequences that would satisfy the requirements for *coram nobis,* the district court denied the writ.

The court ruled alternatively on the merits. It found that the *Nappo* ruling that there was no taking of property such as would support a larceny conviction did not bar prosecution for fraud under § 1341.

Porcelli now appeals that decision.

### DISCUSSION

Porcelli asserts that the *Nappo* ruling establishes that under New York law the State does not possess a vested property right in unpaid taxes. He claims that this decision undermines the basis of our affirmance of his mail fraud convictions in *Porcelli I.* We disagree. Even assuming that the federal mail fraud statute, as construed by *McNally,* requires a scheme to deprive a victim of a property right that is vested, *Nappo* occasions no reason to retreat from our decisions in *Porcelli I* and *II.*

The federal mail fraud statute prohibits "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses." 18 U.S.C. § 1341. There can be no question that Porcelli obtained money for his corporations by false or fraudulent pretenses, in that he reduced their tax bill by fraudulently understating their sales. Porcelli nonetheless argues that his underreporting of gasoline sales could not support a § 1341 mail fraud conviction because the Supreme Court ruled in *McNally* that such a fraud scheme must deprive the victim of a vested property right, and his conduct did not deprive the State of a vested property right.

We held in *Porcelli I* that Porcelli's conduct sought to conceal its sales and thus deprive the State of New York of a vested right in a chose in action. We found that where a vendor has not paid its sales tax obligation, the State possesses a chose in action constituting its right to sue the vendor for the sales taxes the vendor was obligated to remit. Porcelli engaged in a scheme to underreport his gasoline sales and thus concealed his obligation to pay substantial sales taxes. The purpose of the scheme was to conceal from the State its cause of action for unpaid taxes. Such a scheme would effectively deprive the State of its chose in action and thus satisfy any requirement under the mail fraud statute that the object of fraudulent scheme be to deprive the victim of an existing property right. *See Porcelli I,* 865 F.2d at 1361.

 The *Nappo* decision does not alter our conclusion. In *Nappo,* the defendants were charged with larceny in that they failed to report the importation of motor fuel into the State of New York and to pay taxes required by New York law on such importation. New York contended that the failure to pay the taxes due "constituted a larceny of property owned by the State of New York." 94 N.Y.2d at 566, 708 N.Y.S.2d 41, 729 N.E.2d 698. The Court of Appeals pointed out that "[t]he taxes due were not the property of the State prior to their remittance," and that the Penal Law defines larceny as "taking, obtaining or withholding property from an owner thereof." *Id.* at 566–67, 708 N.Y.S.2d 41, 729 N.E.2d 698; New York Penal Law § 155.05(1). The defendants' failure to report their fuel importation and pay taxes due thereon did not constitute a taking, obtaining, or withholding of moneys that belonged to the State, any more than a debtor's intentional failure to pay a debt would constitute larceny of the creditor's moneys.

The holding of *Nappo* is not inconsistent with ours. In *Nappo,* the State did not argue, and the Court did not address, whether a chose in action representing a

claim for unpaid taxes is property of the State. That would in any event have been irrelevant because there had been no taking, obtaining or withholding of the chose in action. What the defendants had done was rather to conceal its existence, by not reporting their importation of fuel. They had committed a fraud, but not a larceny, and larceny was the crime charged.

The defendant here was not charged with theft of the State's property. He was charged with fraudulently underreporting a sales tax obligation so as to reduce his payment of sales taxes. The fact that the State was not the proprietor of the money the defendant was obligated to pay in taxes, and that the defendant did not larcenously take State money does not contradict that he used fraud to conceal from the State its claim for sales taxes and thus effectively deprived the State of it property right in its chose in action. We again reject Porcelli's claim.[1]

1. I offer one further observation. In my view, Porcelli's argument misunderstands and distorts the meaning of the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). What the Supreme Court meant in *McNally* was that the concept of fraud, as incorporated in the federal mail fraud statute, was not satisfied by a scheme to deprive the victim of abstract values such as the right to honest government, but required a scheme aimed against the monetary or property interests of the victim. It did not intend to require that the victim's property interests be limited to vested rights.

In *McNally*, the defendants, a public official of the Commonwealth of Kentucky and another person affiliated with him, were charged with violating § 1341 by participating in a secret scheme to require the insurance agency that sold insurance to the State to share its commissions with companies in which defendants had an interest. The theory of the prosecution was that defendants' participation in this kick-back scheme "defrauded the citizens and government of Kentucky of certain 'intangible rights,' such as the right to have the Commonwealth's affairs conducted honestly." 483 U.S. at 352, 107 S.Ct. 2875. There was no showing, nor was the jury charged, that defendants' scheme had deprived Kentucky of money or "that in the absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance." *Id.* at 360, 107 S.Ct. 2875. The Supreme Court overturned the convictions on the grounds that § 1341 does not encompass schemes that deprived citizens of their right to honest and good government. It held that the "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.' " *Id.* at 358, 107 S.Ct. 2875 (citation omitted).

Porcelli reads this language of *McNally* to suggest that for § 1341 to apply, the mail fraud scheme must deprive the victim of a *vested* right in property. In my view, this misunderstands the Supreme Court's purpose. The Court's point was that the term "fraud" as used in § 1341 was limited to its familiar common law meaning, which involved using falsity to do the victim out of money or property interests—not the expansive meaning adopted by the Courts of Appeals encompassing a deprivation of abstract values like honest government. There was no issue before the Court as to whether the victim's lost financial interest needed to be a vested right. Where the Court said that "the words 'to defraud' commonly refer 'to wronging one in his property *rights,*' " *id.* at 358, 107 S.Ct. 2875 (emphasis added), there was no suggestion that the Court meant anything different from doing one out of "his property *interests.*" I believe that Porcelli's focus on the Supreme Court's use of the word "rights," as implying the need for vested property, reads an unintended limitation into the opinion. The Supreme Court meant that § 1341 did not *expand* the familiar notion of fraud into deprivations of abstract values. Porcelli mistakenly reads the opinion as *narrowing* the meaning of fraud, as embodied in § 1341, by limiting its application to financial interests that are vested.

Where a defendant engages in a scheme to underreport his sales (or other financial activity) with the objective of concealing the full amount of his tax obligation, this involves doing the State out of the kind of interest in money or property that the Supreme Court intended to describe as covered by § 1341. In Porcelli's three appeals, we have reached

## CONCLUSION

The judgment of the district court is AFFIRMED.

the same result relying on the State's ownership of the chose in action representing its claim for unpaid taxes. But I believe the filing of false tax returns so as to conceal the full amount of taxes due satisfies the limitation imposed by the Supreme Court in *McNally* without need to seek justification by reference to the State's vested right in a chose in action. *See United States v. Helmsley,* 941 F.2d 71, 94 (2d Cir.1991) (scheme to file false personal and business returns to state taxing authorities satisfied § 1341's requirement of a scheme to deprive the victim of money or property, even where there was no proof of taxes actually due to the state); *United States v. Bucey,* 876 F.2d 1297, 1309–11 (7th Cir. 1989) (finding that tax fraud scheme satisfies *McNally's* requirement of a property interest, even where defendant's tax obligation was due and owing and not immediately vested in the government); *United States v. Regan,* 699 F.Supp. 36, 40 (S.D.N.Y.1988) (in a § 1341 prosecution for tax fraud, noting that "[w]hether the government had a vested property interest during the life of the scheme is irrelevant. If the alleged scheme had been brought to fruition, it would have fraudulently deprived the government of tax receipts").