UNITED STATES of America,
Appellee,

v.

Kenneth Eugene SPEIGHT,
Defendant–Appellant.

No. 02–1342.

United States Court of Appeals,
Second Circuit.

Aug. 28, 2003.

Elizabeth S. Riker, Assistant United States Attorney, (Craig A. Benedict, Assistant United States Attorney) for Glenn T. Suddaby, United States Attorney, Northern District of New York, Syracuse, NY, for Appellee.

Bruce R. Bryan, Syracuse, NY, for Defendant–Appellant.

Present: B.D. PARKER, Jr., RAGGI, Circuit Judges, and SWAIN,\* District Judge.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the conviction and sentence of the District Court are **AFFIRMED.**

Defendant-appellant Kenneth Eugene Speight appeals from a judgment of the United States District Court for the Northern District of New York (David N. Hurd, *Judge*), following his conviction for conspiracy to commit mail fraud (18 U.S.C. § 371), conspiracy to injure federal officers (18 U.S.C. § 372), and three counts of mail fraud (18 U.S.C. § 1341). The Government's evidence demonstrated that while Speight was an inmate at the Federal Correctional Institution at Ray Brook, N.Y. he participated in a scheme using the mails to file fraudulent liens in amounts totaling many millions of dollars against the property of, among others, the Connecticut federal prosecutors and district court judge who were involved in the 1997 firearms conviction that led to his incarceration at Ray Brook. Following his conviction in the Northern District, Speight was sentenced principally to 72 months' imprisonment. On appeal, he challenges his conviction on numerous grounds, including the facial sufficiency of the substantive mail fraud counts of indictment, the adequacy of the government's proof of mail fraud, and various of the court's evidentiary rulings during trial.

To obtain a conviction under § 1341, the Government must prove, among other things, that a defendant "devised or intend[ed] to devise any scheme or artifice to

defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341. Speight contends that his indictment did not allege a "scheme to defraud" or the "money or property" element of the mail fraud offense since a "scheme to defraud" requires "an intent to deceive *and* intent to cause actual harm." *United States v. Chandler,* 98 F.3d 711, 715 (2d Cir.1996) (internal quotation marks omitted and emphasis in original). We find no merit to this contention, which blurs the distinction between the facial sufficiency of the indictment and the adequacy of the government's proof at trial.

■ Here, the indictment alleged that Speight mailed various federal officials numerous letters—with such titles as "Billing Statement," "Notice of Claim and Request for Payment," and "Notice of Default"—that falsely claimed that these officials owed him multimillion-dollar debts and, in some cases, filed liens against these officials when they did not pay. The indictment also alleged that these mailings and liens were designed to "obtain money" and "falsely and fraudulently establish [his victims'] indebtedness." (Indictment at 4–5.) As such, the indictment, which tracks the language of the statute, sufficiently alleged that Speight intended to deceive these officials into believing that they owed him money and to obtain their money through false representations. *See United States v. Flaharty,* 295 F.3d 182, 198 (2d Cir.) ("In order to state an offense, an indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, ... state time and place in appropriate terms." (internal quotation marks omitted)). Accordingly, Speight's challenge to the facial sufficiency of the indictment fails.

Speight also challenges the adequacy of the Government's proof at trial of mail fraud. In particular, Speight contends that no evidence was adduced that he intended to deceive or to cause harm. In addition, he contends that the Government's theory at trial was that the fraudulent liens merely risked the credit ratings of the federal officials whom he targeted and that this risk does not equate to an attempt to obtain money or property necessary for conviction under § 1341. *See, e.g., Porcelli v. United States,* 303 F.3d 452, 457 n. 1 (2d Cir.2002) (noting that mail fraud statute "require[s] a scheme aimed against the monetary or property interests of the victim").

■ The evidence adduced at trial, when viewed in the light most favorable to the Government, *see United States v. Valenti,* 60 F.3d 941, 945 (2d Cir.1995), showed that Speight, using the mails, devised and implemented a plan to trick federal officials into believing that they owed him millions of dollars so that they would pay him—even if only modest amounts—to terminate the liens. Speight, on the other hand, contends that he was making obviously fanciful claims which these officials were free to reject, that he never sought to conceal his identity, and that he sought these payments in "good faith." Whether Speight acted with innocent motives or with fraudulent intent was for the jury. Since the jury credited the government's proof of motive and rejected Speight's explanations of his conduct, his challenge to the verdict on this ground fails.

A more difficult question is whether one's credit rating qualifies as "money or property" under § 1341. *See, e.g., United States v. Walker,* 191 F.3d 326, 335 (2d Cir.1999) (noting that "money or property," under the mail fraud statute, can include intangibles); *United States v. Dinome,* 86 F.3d 277, 280, 284 (2d Cir.1996)

(recognizing that property, under the mail fraud statute, includes the right to control one's assets). We need not reach this issue since the government's proof at trial also established that Speight intended that the subjects of the fraudulent liens might at some point make nominal payments to him to extinguish the liens and that he hoped at some point to sell the liens at a discount to off-shore financial institutions. Although neither occurred, this proof was nonetheless sufficient to establish that Speight violated § 1341 through his efforts to obtain the money of others through fraudulent means. In *United States v. Wallach*, 935 F.2d 445, 461 (2d Cir.1991), we held that "although money or property must be the object of the scheme, the government is not required to show that the intended victim was actually defrauded. The government need only show that the defendants contemplated some actual harm or injury." (internal citation omitted). Here, the Government offered sufficient evidence of intended harm to support Speight's conviction for mail fraud.

■ As the Government concedes, it made mistakes during its arguments. During the Government's opening statement, the prosecuting attorney, to whom Speight had also sent demands for money, used the first-person when describing a meeting with Speight that the prosecutor had attended. Speight objected, and—although the court in effect overruled the objection—the prosecutor sufficiently clarified that his use of "we" referred to the United States of America, rather than to any personal knowledge he might have. We find these curative steps to have been sufficient.

■ Toward the end of his opening statement, the prosecutor brandished an unsigned lien-termination form, challenged Speight to sign it, and left it on the podium, where Speight, acting *pro se*, was to deliver his opening statement. Moreover, during summation, the prosecutor improperly endorsed the credibility of a Government witness—a fellow assistant United States attorney. Speight did not object to either of these statements. "In the absence of a timely objection at trial, defendant must show that the statements were so substantially prejudicial as to constitute 'flagrant abuse.'" *United States v. Russo*, 302 F.3d 37, 47 (2d Cir.2002) (quoting *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir.1998)). We find no such abuse. The Government's use of the lien-termination form during its opening argument may have constituted error but, given the ample evidence that Speight had levied the liens against the federal officials in question, the use of the form did not affect the outcome of the District Court's proceedings and, as such, did not constitute flagrant abuse.

■ Turning to the Government's closing argument, "[a] prosecutor's statements during summation, if improper, will result in a denial of due process rights only if, in the context of the entire summation, they cause the defendant substantial prejudice." *United States v. Salameh*, 152 F.3d 88, 133 (2d Cir.1998) (internal quotation marks omitted). We find that the Government's expression of a personal opinion may have been improper but, when "viewed against the entire argument before the jury," *Germosen*, 139 F.3d at 128, did not cause Speight substantial prejudice or deprive him of a fair trial.

Speight also contests an October 25, 2001 court order that was prompted by his request to obtain those personal legal papers he contended were necessary for the preparation of his defense that he had left behind in FCI Ray Brook at the time of his transfer to another correctional institution. The order would have allowed the Government to go through his voluminous

personal papers at Ray Brook and forward him those documents that were relevant to his defense. Before the Government could begin searching, however, the order required Speight to provide the Government with a list of the specific documents that he needed. Speight never gave the Government this list, and the Government never examined his papers pursuant to the order. As the court's order was never carried out, there was no prejudice to him and certainly no reversible error.

■ Speight also disputes the restrictions that the District Court placed on his cross-examinations. A district court has "wide latitude" in setting the scope of cross-examination, based on concerns for the potential for harassment, prejudice, confusion of issues, repetition, and irrelevance. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). As the record demonstrates, Speight's pro se cross-examinations were often confused, and he interspersed his questioning with lengthy soliloquies. The court's decision to allot 30 minutes to each of Speight's cross-examinations was well within its discretion.

■ Finally, Speight challenges the District Court's calculation of loss for sentencing purposes. The court adopted the Presentence Report's recommendation that the actual loss caused by Speight's scheme was zero but the intended loss was over $80 million, based upon the aggregate amount that Speight had demanded from officials. U.S.S.G. § 2F1.1(b)(1) (2000) suggests an 18–level enhancement for such an intended loss, which would have given Speight a Guideline range of imprisonment of 188–235 months. Note 11 to that Guideline states, however:

> In a few instances, the loss determined under subsection (b)(1) may overstate the seriousness of the offense. This may occur, for example, where a defen-

dant attempted to negotiate an instrument that was so obviously fraudulent that no one would seriously consider honoring it. In such cases, a downward departure may be warranted.

After noting the multibillion-dollar amounts of Speight's demands and liens, the District Court departed downwards from the guideline range stating that "the intended loss dramatically overstates the seriousness of the offense." (Sentencing Tr. at 19.) The court sentenced Speight to a total term of imprisonment of 72 months, less than half of his Guideline range. Speight contends that the District Court erred in not determining the intended loss to be zero. "[I]ssues not raised in the trial court, including sentencing issues, will be deemed waived on appeal in the absence of plain errors or defects affecting substantial rights." *United States v. Keppler,* 2 F.3d 21, 23 (2d Cir.1993) (internal quotation marks omitted). Since this objection was not raised in District Court, it is waived, absent plain error.

> To establish plain error, a court must find 1) an error, 2) that is plain, 3) that affects substantial rights.... If an error meets these first three requirements, the Court engages in a fourth consideration: whether or not to exercise its discretion to correct the error. The plain error should be corrected only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Keigue,* 318 F.3d 437, 441–42 (2d Cir.2003) (internal citations and quotation marks omitted). Speight has failed to demonstrate that the District Court committed plain error in calculating the intended loss based upon the dollar amounts that Speight himself had requested of various federal officials. Certainly any hypothetical error would not have affected the fairness and integrity of

the proceedings in light of the District Court's conclusion that this calculation "dramatically overstates the seriousness of the offense" and its decision to downwardly depart from the otherwise applicable Guideline range.

We have considered Speight's other contentions and find them to be without merit. Accordingly, we AFFIRM the District Court's judgment.