Oscar PORCELLI, Petitioner–
Appellant,

v.

UNITED STATES of America,
Appellee.

Docket No. 04–2000–PR.

United States Court of Appeals,
Second Circuit.

Argued: Feb. 3, 2005.

Decided: April 12, 2005.

Vivian Shevitz, South Salem, N.Y. (Jane Simkin Smith, Millbrook, N.Y. on the brief) Petitioner–Appellant.

Emily E. Berger, Assistant United States Attorney, Brooklyn, N.Y. (Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, Susan Corkery, Assistant United States Attorney on the brief) for Appellee.

Before: WINTER and POOLER, Circuit Judges; and BRIEANT, District Judge *.

BRIEANT, District Judge.

Oscar Porcelli, a federal felon, appeals from an Order of the United States District Court for the Eastern District of New York denying his petition for a writ of error *coram nobis*, collaterally attacking Porcelli's 1987 federal felony conviction.

■ We review *de novo* the standards that a District Court applies in considering the writ of error *coram nobis* and review for abuse of discretion a District Court's final decision to deny the writ. *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998).

■ *Coram nobis* is an "extraordinary remedy" authorized under the All Writs Act, 28 U.S.C. § 1651(a), generally sought to review a criminal conviction where a motion under 28 U.S.C. § 2255 is unavailable because petitioner is no longer serving a sentence. *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954). To obtain *coram nobis* relief, a petitioner must demonstrate continuing legal consequences of the petitioner's conviction. *Fleming*, 146 F.3d at 90. To do so, petitioner must show a concrete

threat of serious harm. *Id.* at 91. Speculative harms are insufficient to meet this test. *Id.*

*Historical Background:*

Mr. Porcelli operated seventeen retail gasoline stations in the Eastern District of New York under the corporate name Gaseteria. Following a jury trial, which achieved some notoriety at the time, he was found guilty in December 1986, of sixty-one Counts of Mail Fraud (18 U.S.C. § 1341) and a one-count RICO Violation (18 U.S.C. § 1962(c)). These convictions arose out of the failure to collect retail sales tax on the gasoline sold, the filing of some one hundred fraudulent New York State sales tax returns between 1979 and 1982, and the resulting deprivation of the State of New York of nearly $5 million in state sales taxes.[1] On direct appeal, we affirmed the conviction in part, reversed in part and remanded for consideration of issues relating to restitution. *United States v. Porcelli*, 865 F.2d 1352 (1989) (*Porcelli I* ). Familiarity of the reader with that decision is assumed. In it, over a strong dissent by Judge Newman, we found that the mail fraud statute, 18 U.S.C. § 1341, was applicable to a scheme to defraud the State of New York of taxes, and that this was so notwithstanding that the failure to collect sales taxes or the filing of fraudulent returns was merely a misdemeanor. We held in *Porcelli I* that Porcelli deprived the State of its property because he was obliged as a trustee of the State to pay sales taxes to the State, whether or not he actually collected sales taxes, and that his scheme of filing false sales tax returns deprived the State of its

---

* The Honorable Charles L. Brieant of the United States District Court for the Southern District of New York, sitting by designation.

1. Mr. Porcelli was not charged with collecting the sales taxes and failing to remit them, nor was such conduct supported by the proof at trial.

property. *Porcelli I*, 865 F.2d at 1360–61. The State, therefore, had a claim or chose in action, for the difference of what was due and the tax shown on the false returns. *Id.* at 1361.[2] The deprivation was deemed sufficient to show a scheme to defraud, which properly fell within the ambit of the mail fraud statute.[3] *See id.* at 1359.

Thereafter, while serving his sentence, Porcelli sought habeas relief under 28 U.S.C. § 2255. This application was based on an intervening decision of the New York Court of Appeals, *State v. Barclays Bank of N.Y., N.A.*, 76 N.Y.2d 533, 561 N.Y.S.2d 697, 563 N.E.2d 11 (1990), which Petitioner claimed undercut the original rationale for affirming his conviction. In *Porcelli v. United States*, 964 F.2d 1306 (2d Cir.1992) (*Porcelli II*), we affirmed denial of the writ. *Barclays* held that no property interest in checks for taxes due was acquired by the State where it did not first have possession of the checks or the tax dollars. 76 N.Y.2d at 540–41, 561 N.Y.S.2d 697, 563 N.E.2d 11. We held in *Porcelli II* that *Barclays* did "not involve the question whether choses in action in state sales tax law constitute 'property,' and [was] therefore distinguishable." 964 F.2d at 1307. We pointed out again in *Porcelli II* that "Porcelli owed the state, by statute, an obligation to collect and remit taxes to the state, whether or not he actually collected the taxes from purchasers." *Id.* at 1308.

Thereafter, on April 26, 2000, subsequent to the decision by the New York State Court of Appeals in *People v. Nappo*, 94 N.Y.2d 564, 708 N.Y.S.2d 41, 729 N.E.2d 698 (2000), Porcelli again moved the District Court for relief under 28 U.S.C. § 2255. *Porcelli v. United States*, No. 00 Civ. 2500 (E.D.N.Y. Jul.17, 2001). Since he was no longer in custody, the District Court properly treated the application as one for a writ of error *coram nobis* under the All Writs Act, 28 U.S.C. § 1651(a). *Id.* In denying the writ, the District Court held that the Petitioner was not then subject to any continuing legal consequences of his conviction. *Id.* The District Court also rejected Petitioner's contention that the recent New York decision in *Nappo* was a basis for relief. *Id.* In that case, the New York Court of Appeals held that taxes due the State were not property of the State prior to their remittance and therefore the defendant could not be charged with a crime arising out of involvement in a scheme not to pay his own taxes. *Nappo*, 94 N.Y.2d at 567, 708 N.Y.S.2d 41, 729 N.E.2d 698. The District Court distinguished *Nappo* from *Porcelli I* on the ground that *Porcelli I* dealt with the obligation of a vendor as a trustee, to collect taxes from its customers on account of the State and to remit the collected taxes to the State.

**2.** As noted in the dissenting opinion in *Porcelli I*, "[i]f, as the panel's opinion holds, the statute could apply to Porcelli's conduct on a theory of concealment of a chose in action, his conviction is invalid because this theory was not charged in the indictment nor placed before the jury in the trial judge's charge." *Porcelli I*, 865 F.2d at 1367 (Newman, J., dissenting).

**3.** Caution is required when dealing with the federalization of state offenses. *See Cleveland v. United States*, 531 U.S. 12, 24–25, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) (warning against altering the federal-state balance in the prosecution of crimes, absent clear direction from Congress); *see also United States v. Margiotta*, 688 F.2d 108, 141–42 (2d Cir.1982) (Winter, J., dissenting) (warning against broad construction of criminal statutes and extensions of mail fraud by judicial fiat) (overruled by *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (abrogated by 18 U.S.C. § 1341)); *United States v. Rybicki*, 354 F.3d 124, 142–43 (2d Cir.2003) (in banc).

On direct appeal, we reached the merits of the claim and held that "[e]ven assuming that the federal mail fraud statute, as construed by *McNally,* requires a scheme to deprive a victim of a property right that is vested, *Nappo* occasions no reason to retreat from our decisions in *Porcelli I* and *II.*" *Porcelli v. United States,* 303 F.3d 452, 456 (2d Cir.2002) (*Porcelli III* ).

Mr. Porcelli next filed the Petition for a writ of error *coram nobis* now before us, claiming that the rationale of all prior decisions in his case was now undermined by the February 26, 2003 decision of the Supreme Court in *Scheidler v. National Organization for Women, Inc.,* 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003).

The Government conceded in the District Court that Porcelli's claim satisfied the first two requirements for obtaining *coram nobis* relief set forth in *Morgan,* 346 U.S. at 511–12, 74 S.Ct. 247, and restated in *Foont v. United States,* 93 F.3d 76, 79 (2d Cir.1996), namely, that there are circumstances compelling such action to achieve justice and that sound reasons existed for failure to seek appropriate earlier relief. *Porcelli v. United States,* No. cv–03–4981, at 5 (Mar. 17, 2004) (*Porcelli IV* ). The District Court then considered whether Petitioner's claim satisfied the third requirement that Petitioner continues to suffer legal consequences from his conviction, which may be remedied by granting the writ. *Id.* at 5–9. In his instant Petition, Porcelli made the same third prong assertions previously rejected by the District Court in *Porcelli III.* The only claimed continuing legal consequence worthy of consideration is his statutory preclusion, as a convicted felon, from serving as a juror in state or federal courts. The District Court held that this deprivation was "not the type of continuing collateral consequence of conviction that warrants a coram nobis review." *Id.* at 9. It then reached

the merits of the claim and held that *Scheidler* was distinguishable on its facts. *Id.* at 10–11. This appeal followed.

### The Jurisdictional Predicate

We recognize, as did the District Court, that Porcelli's preclusion from jury service is no more than a jurisdictional hook to support a quest for justice by means of the ancient writ of *coram nobis,* the only procedural device now available to Mr. Porcelli. Indeed, few citizens are breaking down the doors of the courthouses to serve as jurors, and it is obvious that at least one of the lawyers in any case would likely peremptorily challenge Petitioner as a potential juror, upon learning of his prior history. The District Judge noted that Porcelli received a jury qualification questionnaire in early July 2001, but did not return the form until six months later, although directed to do so within ten days. *Porcelli IV* at 9. The District Court also commented that "if the operation of [the New York and federal statutes disqualifying felons from jury duty] creates a substantial disability meriting coram nobis review, few felony convictions would ever be final," and as stated earlier, the Court then held that the deprivation of Petitioner's right to serve on a jury was not the type of continuing collateral consequence of conviction that warrants a *coram nobis* review. *Id.*

Appellant argues that the "parade of horrors" argument, that few felony convictions would ever become final, should be rejected because so few *coram nobis* petitions satisfy the first two prongs of *Foont.* Accordingly, even a slight showing of collateral consequences should be sufficient. In the interest of justice, we assume, as we did in *Porcelli III,* but do not decide, that in the context of this case the inability to serve as a New York State or federal juror is a collateral consequence of conviction

sufficient to support the writ, and move directly to the merits.[4]

*The Merits*

Mr. Porcelli's current petition *coram nobis* challenges his conviction first on the basis of the Supreme Court's subsequent holding in *Scheidler,* 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991. *Scheidler* involved a second appeal to the Supreme Court arising out of a civil RICO judgment for damages and injunctive relief against anti-abortion demonstrators who obstructed access to clinics using violence or threats of violence. *Id.* at 397–98, 123 S.Ct. 1057. The RICO predicate acts were pleaded as Hobbs Act extortion violations. The statutory definition of extortion, tracing its historical source to the New York Penal Law, is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The majority in *Scheidler* held:

> [W]e have construed the extortion provision of the Hobbs Act at issue in these cases to require not only the deprivation but also the acquisition of property. See, *e.g., Enmons* [410 U.S. at 400, 93 S.Ct. 1007]. (Extortion under the Hobbs Act requires a " 'wrongful' *taking* of . . . property" (emphasis added)). With this understanding of the Hobbs Act's requirement that a person must "obtain" property from another party to commit extortion, we turn to the facts of these cases.
>
> There is no dispute in these cases that petitioners interfered with, disrupted, and in some instances completely deprived respondents of their ability to exercise their property rights. Likewise, petitioners' counsel

readily acknowledged at oral argument that aspects of his clients' conduct were criminal. But even when their acts of interference and disruption achieved their ultimate goal of "shutting down" a clinic that performed abortions, such acts did not constitute extortion because petitioners did not "obtain" respondents' property. Petitioners may have deprived or sought to deprive respondents of their alleged property right of exclusive control of their business assets, but they did not acquire any such property. Petitioners neither pursued nor received "something of value from" respondents that they could exercise, transfer, or sell. *United States v. Nardello,* 393 U.S. 286, 290, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969). To conclude that such actions constituted extortion would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion.

537 U.S. at 404–05, 123 S.Ct. 1057 (footnote omitted).

Leaving aside that Supreme Court jurisprudence about abortion is *sui generis,* this statutory construction of the Hobbs Act is not properly carried over to the mail fraud statute under which Mr. Porcelli was convicted. Appellant argues that his conviction should be vacated because the federal mail fraud statute should now be construed *in pari materia* with the Hobbs Act, to require as an element of the crime, that Appellant actually obtained or sought to obtain money or property. In the context of this case, he argues, obtaining the money or property would be an impossibil-

---

**4.** The Supreme Court, in another context, has held that deprivation of the right to serve as a juror constitutes a collateral consequence for purposes of avoiding mootness. *See Carafas v. LaVallee,* 391 U.S. 234, 237, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

ity, since Porcelli already possessed the money or property of which he was convicted of scheming to acquire.

Appellant's contention that *Scheidler's* construction of the Hobbs Act should provide him relief because he didn't actually "obtain" money or property by his actions is unavailing. The District Court held correctly that " 'in contrast to the Hobbs Act, neither the mail nor wire fraud statute requires that a defendant "obtain" property before violating the statute.' " *See Porcelli IV* at 10 (citing *United States v. Welch,* 327 F.3d 1081, 1108 n.27 (10th Cir.2003)). In relevant part, the mail fraud statute states that it is unlawful to:

> [devise or intend to devise] any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations . . . [and] for the purpose of executing such scheme or artifice or attempting so to do [use the mails].

18 U.S.C. § 1341.

Although written in the disjunctive, the mail fraud statute does not criminalize two separate acts. The second clause, "or for obtaining money or property," was intended to be read in connection with "any scheme or artifice to defraud." *McNally,* 483 U.S. at 358–59, 107 S.Ct. 2875. The statute has thus been interpreted to criminalize any scheme or artifice for obtaining money or property. *See id.* at 358, 107 S.Ct. 2875. We have held that the essential elements of a mail fraud violation include: (1) use of the mails to further (2) a scheme to defraud with (3) money or property as the object of the scheme. *United States v. Gole,* 158 F.3d 166, 167 (2d Cir.

1998) (citing *United States v. Dinome,* 86 F.3d 277, 283 (2d Cir.1996)). Under this Court's analysis, the defendant does not need to literally "obtain" money or property to violate the statute. The fact that the Hobbs Act and the mail and wire fraud statutes contain the word "obtain" does not necessitate imposing *Scheidler's* construction of a wholly separate statute onto this Court's pre-existing construction of the mail fraud statute. Accordingly, Appellant's argument for relief premised on the *Scheidler* decision fails.[5]

As a second basis for relief, apart from the intervening decision in *Scheidler,* Porcelli argues generally that the plain meaning of the mail fraud statute renders his conviction improper, and, as stated at oral argument, "wrong." He argues that there never was an obtaining by fraud of something he already possessed (the chose in action, or the tax money never collected) and that the word "obtaining" should not be mere surplusage, but should be read to mean "obtaining property from the victim," which Porcelli did not do. Appellant relies on our prior description of his criminal conduct in *Porcelli III:*

> The purpose of the scheme was to conceal from the State its cause of action for unpaid taxes. Such a scheme would effectively deprive the State of its chose in action and thus satisfy any requirement under the mail fraud statute that the object of fraudulent scheme be to deprive the victim of an existing property right.

303 F.3d at 456.

Porcelli argues that this description does not comprise either an obtaining of, or a

---

5. Following the *Scheidler* decision, other Circuit Courts have rejected this same argument. *See e.g., United States v. Hedaithy,* 392 F.3d 580, 602 n. 21 (3d Cir.2004) ("*Scheidler* [is not] applicable ... because .... [u]nlike the mail fraud statute, the Hobbs Act expressly requires ... that the defendant 'obtained property from another.' 18 U.S.C. § 1951(b)(2) (defining the term 'extortion') ... [H]owever, a mail fraud violation may be sufficiently found where the defendant has merely deprived another of a property right."); *Welch,* 327 F.3d at 1108 & n. 27.

scheme to obtain money or property. His argument is supported by the rule of lenity applicable to criminal statutes, *see generally Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), and the policy that penal statutes ought to be construed in accordance with their plain meaning, so that the least sophisticated citizen may read the statute and regulate his or her conduct consistently therewith.

Attractive though this argument may be, it is too late in history to repudiate the settled doctrine of *Porcelli I.* In the sixteen years during which *Porcelli I* has been on the books, we have followed and applied it on numerous occasions in similar contexts. *See, e.g., Ideal Steel Supply Corp. v. Anza,* 373 F.3d 251, 256 (2d Cir. 2004); *Fountain v. United States,* 357 F.3d 250, 256 (2d Cir.2004); *United States v. Trapilo,* 130 F.3d 547, 552 (2d Cir.1997). Congress, which has amended the mail fraud statute four times during that period, is deemed to have relied on our construction.

Furthermore, we have recently affirmed that uncollected sales taxes in the hands of a seller are "property" within the meaning of the mail fraud statute. In *Fountain,* we held:

> Because we interpret the Supreme Court's decision in *Cleveland* [*v. United States,* 531 U.S. 12, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) ] as effecting a limited alteration in the course of interpretation of the mail and wire fraud statutes rather than as completely redirecting the stream, we continue to deem taxes owed to governments—whether foreign or domestic and whether state or federal—"property" within the meaning of the mail and wire fraud statutes.

357 F.3d at 260. In so holding, this Court affirmed its prior holdings that prosecutions for tax fraud are permissible under the mail fraud statute. *See id.* at 256 (citing *Porcelli I,* 865 F.2d at 1360).

Under the circumstances, the District Court did not abuse its discretion in denying the writ of error *coram nobis.* Affirmed.