**UNITED STATES of America,**
**Appellee,**

v.

**Stephen MALES, Jr., Defendant–**
**Appellant.**

**Docket No. 04–2880–cr.**

United States Court of Appeals,
Second Circuit.

Argued: March 21, 2005.

Decided: Aug. 1, 2006.

---

Jane A. Levine, Assistant United States Attorney, (David N. Kelley, United States Attorney for the Southern District of New York, Adam B. Siegel, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

Darrell B. Fields, The Legal Aid Society, Federal Defender Division, New York, NY, for Defendant–Appellant.

Before SOTOMAYOR, RAGGI, and HALL, Circuit Judges.

HALL, Circuit Judge.

Stephen Males, Jr. appeals from a judgment of conviction entered after a jury trial before the United States District Court for the Southern District of New York (Kaplan, *J.*). Males was convicted of eleven counts of wire fraud in violation of 18 U.S.C. § 1343 and was sentenced principally to 78 months' imprisonment.

## I. Background

Viewing the facts in the light most favorable to the government, as we must following the jury's verdict, *see United States v. Ford*, 435 F.3d 204, 206 (2d Cir.

2006), we are presented with the following. Males is a New Hampshire attorney who engineered a fraudulent scheme in order to bilk investors out of millions of dollars. He identified himself to potential investors as the lawyer for a firm named the Bailey Group and promised exorbitant returns on their investments—upwards of 100% per week—if the investors would agree to allow him to freeze or reserve their accounts in favor of the Bailey Group and add two of his "traders" as signatories to the accounts. Males presented both requirements to potential investors as somehow protecting them. In order to freeze the accounts, Males had investors execute a "non-depletion letter" which confirmed that the account would be held for the Bailey Group and that its funds could not "be removed or encumbered and shall be utilized exclusively for a private placement business transaction." One of the investors turned out to be FBI Special Agent Michael Keeley, posing as James Webber, a pension fund manager who controlled $164 million in pension assets. Males repeatedly touted the investment scheme to Agent Keeley through telephone and e-mail communications. Agent Keeley agreed that he would commit the $164 million to the care of the Bailey Group and would allow Males to list the Bailey Group traders as signatories on the account.

During this time, as part of an unrelated investigation, FBI Special Agent Gregory Coleman telephoned Males, identified himself as an FBI agent, and spoke to him about the Bailey Group. In that conversation, Males denied having met personally anyone in the Bailey Group, although he admitted that he worked with the Group on occasion.

After the conversation with Agent Coleman, Males continued to pursue Agent Keeley to become an actual participant. Males repeatedly requested that Agent Keeley complete and execute a non-deple-

tion letter and that Agent Keeley add the Bailey Group's traders as signatories to the $164 million account. Males was then arrested and charged with eleven counts of wire fraud, each count based on a telephone call or e-mail message in which Males attempted to convince Agent Keeley to participate in the Bailey Group's investment plan. Following a jury trial, during which the government presented substantial evidence that Males' trading program was nothing more than a fraudulent scheme and Males' only defense was his own testimony, the jury convicted Males on the wire fraud charges. The court sentenced him principally to 78 months' imprisonment pursuant to a sentencing agreement that he entered into with the government.

## II. Standard of Review

Males argues on appeal that the district court gave an improper jury instruction regarding the elements of 18 U.S.C. § 1343 as they applied to the facts of his case. We review de novo the propriety of a jury instruction. *United States v. Pimentel,* 346 F.3d 285, 301 (2d Cir.2003). " 'A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law.' " *Id.* (quoting *United States v. Walsh,* 194 F.3d 37, 52 (2d Cir. 1999)). "We do not review portions of the instructions in isolation, but rather consider them in their entirety to determine whether, on the whole, they provided the jury with an intelligible and accurate portrayal of the applicable law." *United States v. Weintraub,* 273 F.3d 139, 151 (2d Cir.2001).

## III. Discussion

### A. *Jury Instruction*

Males makes a compound argument with respect to the district court's jury instruction; it can be sorted out as follows. He argues in one part that the district court

erred by reading the wire fraud statute, 18 U.S.C. § 1343, in the disjunctive, a reading that would allow a jury to convict him of wire fraud if the government could prove that he engaged in (1) any scheme or artifice to defraud *or* (2) any scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises. The second part of his argument is that the district court erred in its instruction regarding the defendant's scheme or artifice for obtaining money or property because it allowed the jury to convict him even though his intent was only to freeze Agent Keeley's account temporarily and was neither to "transfer … Keeley's money to [himself] or to someone [he] had aided or abetted," nor to permanently deprive Agent Keeley of his money.

 i. A disjunctive reading of the statute

The relevant portion of the wire fraud statute reads as follows:

> Whoever, *having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,* transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343 (emphasis added).[1]

 Males' argument that the district court erred by reading the requirement of the first two phrases of § 1343 in the disjunctive verges on the frivolous. It is well established that the language in § 1343, "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," is not to be read in the disjunctive. *See Cleveland v. United States,* 531 U.S. 12, 26, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) (reaffirming that § 1341 should not be read in the disjunctive). Although during the charge conference, outside the presence of the jury, Judge Kaplan stated that "the statute is written in the disjunctive," the actual instruction that he gave to the jury properly conjoined the two components. The district court instructed the jury that the phrase "any scheme or artifice to defraud" is defined as:

> [A]ny plan, device or course of action that deprives another of money or property by means of false or fraudulent pretenses, representations or promises. It is, in other words, a plan to deprive another of money or property by trick, deceit, deception, swindle or overreaching.

That instruction comports with the Supreme Court's command that the statute be read conjunctively to require that the defendant not only devise a scheme or artifice, but also use that scheme or artifice to obtain money or property. *Id.* Thus, although the district court spoke in passing about the disjunctive nature of § 1343's phrasing, there was no error in the jury charge on that point.

---

1. The mail fraud statute, 18 U.S.C. § 1341, similarly prohibits the use of the mail to perpetrate "any scheme or artifice to defraud." Although much of the following analysis relies on case law interpreting the mail fraud statute, because both statutes criminalize "any scheme or artifice to defraud," it is appropriate to apply a similar construction to both statutes and "apply the same analysis to both sets of offenses." *Carpenter v. United States,* 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987); *see also United States v. Thomas,* 377 F.3d 232, 242 n. 5 (2d Cir.2004).

### ii. Intent to Obtain

The second part of Males' argument is that the jury should have been instructed that it could only convict him if it found that he intended to "obtain" his victim's money. That is, if the jury found that his intent was only to freeze Agent Keeley's account temporarily, and not to transfer the money to himself or an accomplice or to remove any money from Agent Keeley's account permanently, then he could not be convicted of wire fraud. Males cites several cases from our sister circuits in support of his argument. See Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Employees & Rest. Employees Union, 215 F.3d 923, 926–27 (9th Cir.2000) ("The purpose of the mail fraud and wire fraud proscriptions is to punish wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings."); United States v. Walters, 997 F.2d 1219, 1227 (7th Cir.1993) ("Both the 'scheme or artifice to defraud' clause and the 'obtaining money or property' clause of § 1343 contemplate a transfer of some kind.... A deprivation is a necessary but not a sufficient condition of mail fraud."); United States v. Baldinger, 838 F.2d 176, 180 (6th Cir.1988) (Section 1341 "was intended by the Congress only to reach schemes that have as their goal the transfer of something of economic value to the defendant." (internal quotation marks omitted)).

■ We have previously addressed the meaning of "scheme or artifice for obtaining money or property" in the context of the mail fraud statute, 18 U.S.C. § 1341, however, and we held that a "defendant does not need to literally 'obtain' money or property to violate the statute." Porcelli v. United States, 404 F.3d 157, 162 (2d Cir.2005). Porcelli was convicted of failing to collect state sales tax on gasoline sales and of filing fraudulent state sales tax returns, thereby depriving New York State of $5 million in tax revenue. Id. at 158. He sought to have his conviction overturned because he had not actually obtained any money or property from the State of New York during the course of his offense. Id. at 161. We rejected this argument, and in so doing, agreed with the Third Circuit that " 'a mail fraud violation may be sufficiently found where the defendant has merely deprived another of a property right.' " Id. at 162 n. 5 (quoting United States v. Hedaithy, 392 F.3d 580, 602 n. 21 (3d Cir.2004)). For purposes of establishing this element under § 1343, therefore, it is sufficient that a defendant's scheme was intended to deprive another of property rights, even if the defendant did not physically "obtain" any money or property by taking it from the victim. See id. at 162.

■ Males' position here is slightly different from that asserted by the defendant in Porcelli. Males claims that he never intended to deprive Agent Keeley permanently of his money or property, but rather he only intended to obtain the use of it, i.e., freeze the account for a limited time so that Agent Keeley would not have access to it during that period. Males argues that the jury should have been charged that if it found the facts as he asserts them, then it could not convict him of wire fraud because his intended temporary use of the pension account did not amount to "obtaining" money or property. Even if Males were to be believed, what he posits is a distinction that makes no difference in our analysis. Under either scenario, whether temporarily, as here, or permanently, as in Porcelli, a victim is deprived of the ability to use his personal property. The requirement under § 1343 that the defendant devise a scheme or artifice for obtaining money or property is satisfied where a defendant fraudulently

obtains the *use* of another person's money or property for a period of time, using it for his own personal profit, and depriving the owner of the ability to do so. Accordingly, the district court's instruction to the jury that "some actual economic harm or injury to the victim must have been contemplated by [Males]," but that "the requirement of contemplated harm or injury does not require that [Males] intended to permanently de[p]rive the victim's money or property," was an accurate statement of the applicable law, and there was no error.

In addition, we note that each of the cases on which Males relies are distinguishable and, indeed, do not clearly support his argument. For example, in *Walters*, 997 F.2d 1219, the principal case on which Males relies, the Seventh Circuit reversed the mail fraud conviction of a defendant who signed contracts with college athletes in violation of National Collegiate Athletic Association ("NCAA") regulations. *See id.* at 1222. The court concluded that no evidence established that the defendant knowingly caused the athletes' universities to mail false amateur status certifications to the NCAA, the crux of the alleged fraud. This case presents no such sufficiency concern. Further, the *Walters* court concluded that the record failed to establish a scheme for the defendant to obtain any money or property, directly or indirectly, from the victim universities. Their purported loss was scholarship money paid to athletes made ineligible by their contracts with the defendant. Meanwhile, the defendant hoped to profit, not from his control or use of the universities' property but from the professional contracts he expected the athletes to sign. After discussing certain antitrust implications of the claim, *see id.* at 1224–25, the *Walters* court concluded that, without a showing of the defendant's intent to obtain money or property from the universities or the NCAA, the necessary connection between his actions and

his victims' property was too attenuated to establish mail fraud. *Id.* Significantly, the Seventh Circuit identified no such attenuation problem in *United States v. Catalfo*, 64 F.3d 1070 (7th Cir.1995), a case decided two years after *Walters*. There, the court held that using fraud or deceit to obtain access to a victim's bank account for the purpose of using it as collateral can constitute wire fraud even if the defendant never contemplates actually removing money from the account. *Id.* at 1077. As the district court correctly recognized, *Catalfo* is more analogous to Males' situation than *Walters*.

The other cases Males cites are similarly unpersuasive. In *Monterey Plaza Hotel*, 215 F.3d 923, the Ninth Circuit considered a case in which the defendant, a union, was convicted under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, based on predicate acts of mail and wire fraud, for having waged an aggressive campaign of picketing and extortion against a hotel. *See id.* at 924. While the defendant's actions interfered with the victim's goodwill, the Ninth Circuit concluded that such actions did not constitute mail or wire fraud because the defendant had not sought actually to obtain the victim's property, i.e., the hotel's goodwill, through its scheme. *Id.* at 926. Similarly, in *Baldinger*, 838 F.2d 176, the defendant was convicted of mail fraud after conducting a campaign of mailing letters to his victim's customers falsely and maliciously stating that the victim was conducting polygraph examinations without a license. *Id.* at 177. Dealing with such intangible rights, the Sixth Circuit concluded that the defendant could only be convicted if the jury found that he had been "motivated by personal gain." *Id.* at 180. Significantly, in neither *Monterey Plaza* nor *Baldinger* did the defendant seek to *use* their victim's property, as Males did. At most, these cases suggest that it may not be enough for defendants

simply to interfere with their victims' property rights where those property rights are intangible.

### B. Sentencing

Males also challenges the sentence imposed upon him prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The government originally set forth a waiver argument but subsequently withdrew that argument by letter dated April 7, 2005, and consented to remand pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005). Accordingly, because Males was sentenced under the mandatory Sentencing Guidelines regime, we remand for the district court to reconsider the imposed sentence in light of *Booker* and *Crosby*.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED, and the case is REMANDED for reconsideration of the sentence in light of *United States v. Crosby*.