[961 NE2d 1111, 938 NYS2d 500]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH HIGHTOWER, Appellant.

Argued November 14, 2011; decided December 13, 2011

## POINTS OF COUNSEL

*Legal Aid Society*, New York City (*Adrienne Hale* and *Steven Banks* of counsel), for appellant. The accusatory instrument was jurisdictionally defective, as its allegations—that appellant used an unlimited MetroCard to swipe a person into the subway system in exchange for money—failed to provide reasonable cause to believe that appellant committed the crime of petit larceny, because there was no taking of "property" from an "owner" thereof as proscribed by the larceny statutes. (*People v Dreyden*, 15 NY3d 100; *People v Kalin*, 12 NY3d 225; *People v Dumas*, 68 NY2d 729; *People v Maldonado*, 86 NY2d 631; *People v Jones*, 9 NY3d 259; *People v Alejandro*, 70 NY2d 133; *People v Hall*, 48 NY2d 927; *People v Case*, 42 NY2d 98; *People v Scott*, 3 NY2d 148; *People v Zinke*, 76 NY2d 8.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*John B.F. Martin* and *Patricia Curran* of counsel), for respondent. The misdemeanor complaint set forth reasonable cause to believe that defendant committed the crime of petit larceny. In

any event, defendant waived his appellate challenge to the sufficiency of the complaint by pleading guilty and, thus, has forfeited his right to appellate review. (*People v Kalin*, 12 NY3d 225; *People v Alejandro*, 70 NY2d 133; *People v Weinberg*, 34 NY2d 429; *People v Connor*, 63 NY2d 11; *People v Dreyden*, 15 NY3d 100; *People v Fernandez*, 67 NY2d 686; *People v Konieczny*, 2 NY3d 569; *People v Keizer*, 100 NY2d 114; *People v Hansen*, 95 NY2d 227; *People v McDermott*, 69 NY2d 889.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

This appeal presents the interesting issue of whether defendant's swipe of an unlimited MetroCard in return for a fee, although decidedly criminal in nature, constituted larceny. We hold that it did not.

The question before the Court, as to the consequences of unauthorized uses of an otherwise valid MetroCard, is not academic. Last year, subway ridership in New York City topped 1.6 billion, making the City's system, consisting of 468 stations, the fourth busiest in the world. Since its introduction in 1998, the unlimited MetroCard has become a popular option among riders, with the 30-day unlimited card alone accounting for nearly one third of the 29 million weekly swipes (*see* Albert Sun, *How MetroCard Swipes Reveal a Changing City*, Wall St J, http://blogs.wsj.com/metropolis/2011/10/20/how-metrocard-swipes-reveal-a-changing-city [Oct. 20, 2011]).

On February 15, 2009, a police officer observed defendant swiping an unlimited MetroCard through a turnstile in a Midtown Manhattan New York City Transit Authority (NYCTA or the Authority)[1] subway station, but instead of proceeding to the platform himself, allowing another person to gain access to the subway platform, and accepting an unknown amount of money in exchange. As a result of this transaction, defendant was convicted of petit larceny.

There are several types of MetroCards, including pay-per-ride cards and unlimited cards. An unlimited MetroCard is a fare card that grants unlimited access to subways and buses within the NYCTA system for a set price and it remains valid for a specified period of time (e.g., 30 days or seven days), with the restriction that a user must wait 18 minutes between swipes at the same station or on the same bus route.

---

1. The NYCTA is also known as the MTA New York City Transit.

Unlimited MetroCards are transferable, but the person lending or giving the card away is not permitted to accept money in exchange.[2] A MetroCard can be swiped through an electronic reader in a subway station in order to determine the amount of money left on the card (in the case of a pay-per-ride card) or the expiration date (in the case of an unlimited card).

A misdemeanor information was issued and it described the events giving rise to the charges, including the officer deponent's observations at the time of the incident:

> "[D]eponent observed the defendant receive money from one individual in exchange for which deponent observed the defendant immediately thereafter swipe an unlimited ride MetroCard through the turnstile in order to allow said individual to enter the subway station beyond the turnstiles without permission or authority to do so . . .

> "[D]efendant did not enter the subway station beyond the turnstiles . . . [D]eponent recovered said unlimited ride MetroCard from defendant . . . [and] determined this card was an unlimited ride MetroCard by swiping it through a[n] [NYCTA] MetroCard reader."

Defendant was charged with one count of petit larceny (pursuant to Penal Law § 155.25), one count of unauthorized sale of certain transportation services (pursuant to Penal Law § 165.16 [1]),[3] and one count of illegal access to Transit

---

2. It is illegal for a person who is not authorized by the NYCTA to sell access to its services to do so (see Penal Law § 165.16 [1]; 21 NYCRR 1050.4).

3. "A person is guilty of unauthorized sale of certain transportation services when, with intent to avoid payment by another person to the metropolitan transportation authority, New York city transit authority or a subsidiary or affiliate of either such authority of the lawful charge for transportation services on a railroad, subway, bus or mass transit service operated by either such authority or a subsidiary or affiliate thereof, he or she, in exchange for value, sells access to such transportation services to such person, without authorization, through the use of an unlimited farecard or doctored farecard. This section shall apply only to such sales that occur in a transportation facility, as such term is defined in subdivision two of section 240.00 of this chapter, operated by such metropolitan transportation authority, New York city transit authority or subsidiary or affiliate of such authority, when public notice of the prohibitions of its section

Authority services (pursuant to 21 NYCRR 1050.4).[4] Defendant entered a plea of guilty to petit larceny in satisfaction of all of the charges and was convicted of that crime.[5] The Appellate Term affirmed the judgment of conviction (28 Misc 3d 131[A], 2010 NY Slip Op 51269[U] [App Term, 1st Dept 2010]). A Judge of this Court granted defendant leave to appeal (15 NY3d 953 [2010]). We now reverse and, since defendant has already served his sentence, dismiss the accusatory instrument.

The factual portion of a misdemeanor information charging multiple counts shall "consist of a single factual account applicable to all the counts of the accusatory part" and

> "[t]he factual allegations may be based either upon personal knowledge of the complainant or upon information and belief . . . [and] in order for an information or a count thereof to be sufficient on its face, every element of the offense charged and the defendant's commission thereof must be supported by non-hearsay allegations of such information and/or any supporting depositions" (CPL 100.15 [3]).

> "A misdemeanor complaint or a felony complaint, or a count thereof, is sufficient on its face when . . .

> "[i]t substantially conforms to the requirements prescribed in section 100.15; and

and the exemptions thereto appears on the face of the farecard or is conspicuously posted in transportation facilities operated by such metropolitan transportation authority, New York city transit authority or such subsidiary or affiliate of such authority" (Penal Law § 165.16 [1]).

4. 21 NYCRR 1050.4 (c) provides that,
"[e]xcept for employees of the authority acting within the scope of their employment or other expressly authorized agents of the authority, no person shall sell, provide, copy, reproduce or produce, or create any version of any fare media or otherwise authorize access to or use of the facilities, conveyances or services of the authority without the written permission of a representative of the authority duly authorized by the authority to grant such right to others."

5. ■ Although defendant waived his right to be prosecuted by a misdemeanor information, he may nevertheless challenge the validity of the accusatory instrument on jurisdictional grounds because "[a] valid and sufficient accusatory instrument is a *nonwaivable jurisdictional prerequisite* to a criminal prosecution" (*People v Case*, 42 NY2d 98, 99 [1977] [emphasis added]).

"[t]he allegations of the factual part of such accusatory instrument and/or any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of such instrument" (CPL 100.40 [4] [a], [b]).

A person is guilty of larceny when, "with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof" (Penal Law § 155.05 [1]) and "[a] person is guilty of petit larceny when he steals property" (Penal Law § 155.25). Property is "any money, personal property, real property, computer data, computer program, thing in action, evidence of debt or contract, or any article, substance or thing of value, including any gas, steam, water or electricity, which is provided for a charge or compensation" and an owner is "any person who has a right to possession thereof superior to that of the taker, obtainer or withholder" (Penal Law § 155.00 [1], [5]).

As is relevant to the facts of the instant case, the misdemeanor information must provide reasonable cause to believe that when defendant, in exchange for money, swiped an unlimited MetroCard thereby allowing an unidentified person to pass through a subway turnstile, he took property belonging to the NYCTA. In *People v Dreyden* (15 NY3d 100, 103 [2010]), we recognized two broad categories of defects to be used as guideposts in determining whether an accusatory instrument is jurisdictionally flawed: "[t]he distinction between jurisdictional and nonjurisdictional defects 'is between defects implicating the integrity of the process . . . and less fundamental flaws, such as evidentiary or technical matters' " (quoting *People v Hansen*, 95 NY2d 227, 231 [2000]) and we find that the violation of the reasonable cause requirement (as set forth in CPL 100.40 [4] [b]) here falls into the first category.

In order for the reasonable cause standard to be met, the factual portion of the accusatory instrument must describe conduct that constitutes the crime charged. Although the information in this case described the events with enough clarity to provide reasonable cause that defendant was engaged in the unlawful sale of NYCTA services and providing unlawful access to NYCTA services, we hold that it was jurisdictionally defective as to the crime of which defendant was actually convicted—petit larceny.

The Authority was not deprived of the unknown amount of money[6] that defendant accepted from the subway rider because it never owned those funds. In *People v Nappo* (94 NY2d 564 [2000]), we held that the State was not the "owner" of uncollected taxes within the meaning of the statutory definition of the term because "taxes due were not the property of the State prior to their remittance" (*id.* at 566). Here, the unknown amount of money paid to defendant could have been due and owing to the NYCTA, but as was the case in *Nappo*, the NYCTA never acquired a sufficient interest in the money to become an "owner" within the meaning of Penal Law § 155.00 (5). In *Nappo*, we recognized that once a trustee has collected the funds, then they can be said to be the property of the ultimate recipient: "the State may be deemed the 'owner' of 'collected' but unremitted sales taxes" (*id.* at 567). Here, as in *Nappo*, "defendant[ ] w[as] not in possession, by trust or otherwise, of monies owned by the [NYCTA]" (*id.*).

The People argue that defendant deprived the NYCTA of a portion of its business and therefore he is guilty of petit larceny. We have held that taking away a portion of a person or entity's business through extortion constitutes larceny (*see People v Spatarella*, 34 NY2d 157, 162 [1974]). However, we decline to extend that reasoning to these facts because here we must assume that the NYCTA voluntarily transferred this valid Metro-Card in a manner consistent with its ordinary course of business by selling the card and receiving the price it set. By contrast, in *Spatarella*, the victim was compelled to give up a business customer (who, unlike the uncollected taxes in *Nappo*, was already within his "control" and "possession") to one of the defendants when that defendant threatened the victim with physical injury.

Accordingly, there is no basis upon which the petit larceny charge in the accusatory instrument can be upheld. Defendant was not prosecuted under the general theft of services statute (Penal Law § 165.15 [3]), a class A misdemeanor, and we do not address its applicability to the facts of this case (*see* Penal Law § 20.10).

The order of the Appellate Term should be reversed and the accusatory instrument dismissed.

---

6. The record does not indicate the amount of money paid to defendant.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.