This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 154
The People &c.,
            Respondent,
        v.
Matthew P.,
            Appellant.

Amy Donner, for appellant.
Ryan Gee, for respondent.

STEIN, J.:

In this appeal, we are asked to consider whether our decision in People v Hightower (18 NY3d 249 [2011]) precludes the larceny prosecution of a defendant who, in exchange for a fee, used a stolen New York City Transit Authority (hereinafter NYCTA) key to allow two individuals to enter the subway system through

- 1 -

an emergency exit gate.  Inasmuch as Hightower is distinguishable and does not bar prosecution under the circumstances of this case, the Appellate Term properly upheld defendant's conviction. We, therefore, affirm.

I.

In June 2011, defendant was charged, by misdemeanor information, with petit larceny, among other crimes.  The factual portion of the information alleged that defendant approached two undercover transit police officers inside a subway station and said, "you have $2, I will let you in."  Upon defendant's receipt of payment, the officers saw him "take a key, open the emergency exit gate and allow [the officers] and defendant through said gate into the subway system, thereby depriving the [NYCTA] of revenue otherwise owed it by the defendant for access to the subway system."  The deponent officer picked up the key from the ground where she saw defendant throw it; defendant then told the officer, "if I told the guy that taught me this he would laugh at me.  I should have known you were both cops."  Based upon her training and experience, the deponent officer stated that only NYCTA employees have permission to possess such a key, and that defendant did not have permission or authority to take the key or use it.

Defendant pleaded guilty to petit larceny under the information; he also pleaded guilty to theft of services under a second information.  As agreed, he received youthful offender

treatment and an aggregate sentence of 15 days in jail.  On his

appeal, the Appellate Term affirmed, rejecting defendant's

challenge to the information charging him with petit larceny as

jurisdictionally defective (41 Misc 3d 128[A] [App Term, 1st Dept

2014]).  A Judge of this Court granted defendant leave to appeal

(23 NY3d 1024 [2014]).

                                II.

    It is well settled that "'[a] valid and sufficient

accusatory instrument is a nonwaivable jurisdictional

prerequisite to a criminal prosecution'" (People v Dreyden, 15

NY3d 100, 103 [2010], quoting People v Case, 42 NY2d 98, 99

[1977]; see People v Kalin, 12 NY3d 225, 229 [2009]).  To be

legally sufficient, "the factual portion of a local criminal

court information" must meet the requirements

> "that it state 'facts of an evidentiary character
> supporting or tending to support the charges' (CPL
> 100.15 [3]; see CPL 100.40 [1] [a]); that the
> 'allegations of the factual part . . . together with
> those of any supporting depositions . . . provide
> reasonable cause to believe that the defendant
> committed the offense charged' (CPL 100.40 [1] [b]);
> and that the '[n]on-hearsay allegations [of the
> information and supporting depositions] establish, if
> true, every element of the offense charged and the
> defendant's commission thereof' (CPL 100.40 [1] [c];
> see CPL 100.15 [3])" (People v Casey, 95 NY2d 354, 360
> [2000]).

A failure to comply with either the reasonable cause requirement

of section 100.40 (1) (b) or the prima facie case requirement of

section 100.40 (1) (c) constitutes a jurisdictional defect (see

Hightower, 18 NY3d at 254; People v Jones, 9 NY3d 259, 262-263

[2007]).[1]

Stated otherwise, "[a]n information is valid for jurisdictional purposes if it contains nonconclusory factual allegations that, if assumed to be true, address each element of the crime charged, thereby affording reasonable cause to believe that defendant committed that offense" (People v Jackson, 18 NY3d 738, 741 [2012]).  This standard is met when "the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense" (Casey, 95 NY2d at 360).  Moreover, as we have repeatedly emphasized, if an accused has received fair notice and double jeopardy has been forestalled, the factual portion of the information "should be given a fair and not overly restrictive or technical reading" (id.; see Jackson, 18 NY3d at 746; Dreyden, 15 NY3d at 103; Kalin, 12 NY3d at 230).

Here, defendant argues that the allegations in the information -- that he used a NYCTA key (that he did not have

---

[1]  We have referred to the requirement set forth in CPL 100.40 (1) (c) as "the prima facie case requirement" (People v Dumay, 23 NY3d 518, 522 [2014] [internal quotation marks and citations omitted]).  However, we have also clarified that CPL 100.40 (1) (c), in fact, has "two 'prima facie' requirements . . . that first, there must be factual allegations establishing every element of the offense and second, those allegations must be 'non-hearsay'" (Casey, 95 NY2d 354, 362 [2000]).  Only the first prima facie requirement -- that the information state a crime by alleging all of the necessary elements -- is jurisdictional and nonwaivable (see id. at 362-367).

authorization to use) to let two undercover police officers through a subway station emergency exit gate in exchange for $2 -- did not establish that he committed the crime of petit larceny because the NYCTA was not the "owner" of any property that was taken within the meaning of the larceny statutes.  In charging defendant with larceny by information, the People were required to establish reasonable cause to believe that, "with intent to deprive another of property or to appropriate the same to himself or to a third person, [defendant] wrongfully t[ook], obtain[ed] or with[held] such property from an owner thereof" (Penal Law § 155.05 [1] [emphasis added]; see Penal Law § 155.25).  "Property" includes "any money, personal property, . . . or thing of value" (Penal Law § 155.00 [1]).  In regard to the challenged element here, an "owner" is defined as "any person who has a right to possession [of property] superior to that of the taker, obtainer or withholder" (Penal Law § 155.00 [5]).  As reflected in its text, section 155.05 (5) "defines ownership broadly . . . [and] codifies the common-law rule, long recognized in this State, that ownership is not limited to the title owner of the property. Rather, it is enough that the person have a right to possession of the property superior to that of the thief" (People v Wilson, 93 NY2d 222, 225 [1999] [internal citations omitted]).  Thus, as we have repeatedly explained, "the definition of ownership does not require that the owner have 'an independent right of possession but only that he [or she has] a possessory right

which, however limited or contingent, [is] superior to that of defendant'" (id. at 225-226, quoting People v Hutchinson, 56 NY2d 868, 869 [1982]).

Under circumstances that were similar to, but distinguishable from, those presented here, this Court previously concluded that an information did not provide reasonable cause to believe that the defendant committed the charged offense of petit larceny where the information alleged that he used an unlimited MetroCard to swipe another person through a subway turnstile in exchange for money (see Hightower, 18 NY3d at 254). We noted that the unlimited MetroCard at issue in Hightower was legally transferrable, although the person lending or giving away the card was not permitted to accept money in exchange (see id. at 252). Critically, while we acknowledged our prior holding in People v Spatarella (34 NY2d 157, 162 [1974]) that, as Hightower put it, "taking away a portion of a person['s] or entity's business" could constitute larceny under certain circumstances, we distinguished Hightower on the ground that "the NYCTA voluntarily transferred [the] valid MetroCard in a manner consistent with its ordinary course of business by selling the card and receiving the price it set" (18 NY3d at 255 [emphasis added]). That distinguishing factor is not present here. The NYCTA was not the owner of the unlimited MetroCard in Hightower or the "business" associated with it because, as compared with the defendant, who lawfully purchased the unlimited MetroCard,

the NYCTA did not have a superior right of possession.  That is,
under the circumstances presented in Hightower, once the NYCTA
sold the card to defendant, it could not reasonably expect to
profit from the use of the card.  Thus, the defendant did not
commit petit larceny because "the unknown amount of money paid to
defendant could have been due and owing to the NYCTA, but . . .
[it] never acquired a sufficient interest in the money to become
an 'owner'" within the meaning of the statute (Hightower, 18 NY3d
at 255).

In contrast, the Appellate Division, First Department, has
concluded, albeit in dicta, that legally sufficient evidence
supported a conviction of petit larceny where a defendant used a
MetroCard with a bent magnetic strip to sell rides to other
persons (People v James, 101 AD3d 447, 448 [1st Dept 2012], lv
denied 20 NY3d 1062 [2013]).  Distinguishing Hightower -- which
involved a purchased, legally transferrable, unaltered MetroCard
-- the First Department concluded that the defendant was guilty
of petit larceny because "he sold 'swipes' that rightfully
belonged to the [NYCTA]" through unauthorized use of an altered
MetroCard (James, 101 AD3d at 488).  Similarly here, the NYCTA
did not voluntarily transfer the key that defendant used to sell
entrance to the subway system or receive a set price for it (cf.
Hightower, 18 NY3d at 255).  Unlike the MetroCard at issue in
Hightower, the NYCTA was the rightful owner of the key because it
"had a right of possession [of the key] superior to that of

defendant, who had no right of possession whatsoever" (People v Hutchinson, 56 NY2d at 869). Nor did defendant have any possessory right or lawful expectation with respect to the business generated from the use of the key.

In short, the information adequately alleged all the elements of a larceny in setting forth defendant's unauthorized use of the illegally-obtained key to allow the undercover officers to enter through the emergency exit gate in exchange for money, thereby depriving the NYCTA, as the owner, of its property. Accordingly, Appellate Term properly rejected defendant's argument that the information was jurisdictionally defective and affirmed his conviction. Finally, we reject defendant's remaining argument as lacking in merit.

Accordingly, the order of the Appellate Term should be affirmed.

People v Matthew P.

No. 154

LIPPMAN, Chief Judge (dissenting):

Defendant's conduct was clearly illegal and is not to be condoned, but it does not amount to petit larceny. He could have, instead, properly been charged with theft of services (Penal Law § 165.15 [3]) or illegal access to Transit Authority services (21 NYCRR § 1050.4 [c]), which apply directly to either obtaining or providing illegal access to the subway system. This case, however, where defendant sold access to the subway system, which he then provided by use of a key, is not meaningfully distinguishable from People v Hightower (18 NY3d 249 [2011]). I therefore dissent and would hold that the information was jurisdictionally defective because the New York City Transit Authority (NYCTA) was not the owner of property, either in the form of potential fares or the money paid to defendant, within the meaning of the larceny statute.

In Hightower, the defendant had used an unlimited MetroCard to allow other individuals access to the subway system in exchange for a fee. There, we determined that the accusatory instrument was jurisdictionally defective as to the charge of petit larceny because it did not provide reasonable cause to

- 1 -

believe that the defendant had taken property belonging to the NYCTA. We held that the NYCTA had not been "deprived of the unknown amount of money that defendant accepted from the subway rider because it never owned those funds" (Hightower, 18 NY3d at 255).

Analogizing the NYCTA's lack of ownership of the potential fare to the State's lack of ownership of uncollected taxes, we relied upon People v Nappo (94 NY2d 564 [2000]), where the defendants had been charged with larceny for failing to pay the required taxes on motor fuel that had been imported from New Jersey. There, we had held that, although the failure to remit applicable taxes was a violation of the Tax Law, the "defendants did not steal money that belonged to New York State," as "[t]he taxes due were not the property of the State prior to their remittance" (Nappo, 94 NY2d at 566). Thus, in Hightower, we determined that "the unknown amount of money paid to [the] defendant could have been due and owing to the NYCTA, but . . . the NYCTA never acquired a sufficient interest in the money to become an 'owner' within the meaning of Penal Law § 155.00 (5)" (18 NY3d at 255). Similarly, here, the NYCTA was not the "owner" of the funds paid to defendant by the undercover officers.

The majority appears to view the NYCTA's "ownership" of potential fares as dependent upon the mechanism an individual uses to gain access to the subway system. However, the NYCTA's rightful ownership of the key used by defendant here bears no

relationship to the issue of the NYCTA's ownership of potential subway fares.  Hightower does not stand for the proposition that the NYCTA had an ownership interest in potential fares that it somehow ceded to the defendant when he purchased a valid unlimited MetroCard.  Rather, the NYCTA was "never" the owner of the potential fares arrogated by the defendant through use of the MetroCard (see 18 NY3d at 255).

Notably, in rejecting the argument that the defendant in Hightower had been guilty of petit larceny by depriving the NYCTA of a portion of its business, we distinguished the situation where a business is forced to give up an existing customer (18 NY3d at 255).  We declined to extend the reasoning of People v Spatarella (34 NY2d 157 [1974]), where the defendant was guilty of larceny by extortion, to the situation where the NYCTA had voluntarily sold a MetroCard to the defendant.  In Spatarella, the defendant had disrupted an existing business relationship for refuse removal by threatening the former provider with bodily harm unless he gave up his customer.  There, we concluded that intangible rights, such as a party's business, could be considered property, subject to larceny by extortion (see 34 NY2d at 162).  However, in declining to apply the reasoning of Spatarella in Hightower, we distinguished the situation where an individual was forced to give up an existing business customer, from the more closely analogous case presented in Nappo, where the taxes were not yet in the State's possession

or control.  Here, the NYCTA's ownership of the unpaid fares is no less inchoate than that presented in <u>Hightower</u>.

Accordingly, because the NYCTA was not the owner of the potential fares or the money paid to defendant, I would modify the Appellate Term order to vacate the plea to petit larceny and dismiss that information.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Stein.  Judges Pigott, Rivera, Abdus-Salaam and Fahey concur.  Chief Judge Lippman dissents in an opinion.

Decided November 19, 2015