Chief Judge Lippman
(dissenting). Defendant’s conduct was clearly illegal and is not to be condoned, but it does not amount to petit larceny. He could have, instead, properly been charged with theft of services (Penal Law § 165.15 [3]) or illegal access to Transit Authority services (21 NYCRR 1050.4 [c]), which apply directly to either obtaining or providing illegal access to the subway system. This case, however, where defendant sold access to the subway system, which he then provided by use of a key, is not meaningfully distinguishable from People v Hightower (18 NY3d 249 [2011]). I therefore dissent and would hold that the information was jurisdictionally defective because the New York City Transit Authority (NYCTA) was not the owner of property, either in the form of potential fares or the money paid to defendant, within the meaning of the larceny statute.
In Hightower, the defendant had used an unlimited Metro-Card to allow other individuals access to the subway system in *339 exchange for a fee. There, we determined that the accusatory instrument was jurisdictionally defective as to the charge of petit larceny because it did not provide reasonable cause to believe that the defendant had taken property belonging to the NYCTA. We held that the NYCTA had not been “deprived of the unknown amount of money that defendant accepted from the subway rider because it never owned those funds” (Hightower, 18 NY3d at 255).
Analogizing the NYCTA’s lack of ownership of the potential fare to the State’s lack of ownership of uncollected taxes, we relied upon People v Nappo (94 NY2d 564 [2000]), where the defendants had been charged with larceny for failing to pay the required taxes on motor fuel that had been imported from New Jersey. There, we had held that, although the failure to remit applicable taxes was a violation of the Tax Law, the “defendants did not steal money that belonged to New York State,” as “[t]he taxes due were not the property of the State prior to their remittance” (Nappo, 94 NY2d at 566). Thus, in High-tower, we determined that “the unknown amount of money paid to [the] defendant could have been due and owing to the NYCTA, but . . . the NYCTA never acquired a sufficient interest in the money to become an ‘owner’ within the meaning of Penal Law § 155.00 (5)” (18 NY3d at 255). Similarly, here, the NYCTA was not the “owner” of the funds paid to defendant by the undercover officers.
The majority appears to view the NYCTA’s “ownership” of potential fares as dependent upon the mechanism an individual uses to gain access to the subway system. However, the NYC-TA’s rightful ownership of the key used by defendant here bears no relationship to the issue of the NYCTA’s ownership of potential subway fares. Hightower does not stand for the proposition that the NYCTA had an ownership interest in potential fares that it somehow ceded to the defendant when he purchased a valid unlimited MetroCard. Rather, the NYCTA was “never” the owner of the potential fares arrogated by the defendant through use of the MetroCard (see 18 NY3d at 255).
Notably, in rejecting the argument that the defendant in Hightower had been guilty of petit larceny by depriving the NYCTA of a portion of its business, we distinguished the situation where a business is forced to give up an existing customer (18 NY3d at 255). We declined to extend the reasoning of People v Spatarella (34 NY2d 157 [1974]), where the defendant was guilty of larceny by extortion, to the situation where the *340 NYCTA had voluntarily sold a MetroCard to the defendant. In Spatarella, the defendant had disrupted an existing business relationship for refuse removal by threatening the former provider with bodily harm unless he gave up his customer. There, we concluded that intangible rights, such as a party’s business, could be considered property, subject to larceny by extortion (see 34 NY2d at 162). However, in declining to apply the reasoning of Spatarella in Hightower, we distinguished the situation where an individual was forced to give up an existing business customer, from the more closely analogous case presented in Nappo, where the taxes were not yet in the State’s possession or control. Here, the NYCTA’s ownership of the unpaid fares is no less inchoate than that presented in High-tower.
Accordingly, because the NYCTA was not the owner of the potential fares or the money paid to defendant, I would modify the Appellate Term order to vacate the plea to petit larceny and dismiss that information.
Judges Pigott, Rivera, Abdus-Salaam and Fahey concur; Chief Judge Lippman dissents in an opinion.
Order affirmed.