# State of New York Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 48
The People &c.,
    Respondent,
        v.
Edward Hardy,
    Appellant.

Ronald Zapata, for appellant.
Mariana Zelig, for respondent.

WILSON, J.:

The issue before us is whether the lower courts erred in permitting amendment of a clearly erroneous fact contained in the information charging Mr. Hardy with harassment and contempt in the second degree. In *People v Easton* (307 NY 336 [1954]), we upheld a similar amendment. However, *Easton* was decided when the Code of Criminal Procedure governed criminal prosecutions. Following several years of study and numerous reports

- 1 -

by the Bartlett Commission,[1] the legislature replaced the Code of Criminal Procedure with the modern Criminal Procedural Law (CPL). Relying on *Easton*, the Appellate Term held that the factual amendment of the clearly erroneous date was permissible. We must now decide whether *Easton* remains good law following the passage of the Criminal Procedure Law. We conclude the CPL displaced *Easton* and precluded prosecutors from curing factual errors or deficiencies in informations and misdemeanor complaints via amendment. The CPL requires a superseding accusatory instrument supported by a sworn statement containing the correct factual allegations. Therefore, we reverse.

I.

On September 10, 2013, Criminal Court issued a two-year order of protection directing Mr. Hardy to refrain from harassing his wife and to stay away from her home. Mr. Hardy violated the order in January 2015 when he "came ringing the bell . . . yelling and screaming . . . and saying all kinds of foul language." His wife averred Mr. Hardy was "out of control" and refused to leave, in violation of the order of protection. He was arraigned the following day on a misdemeanor complaint, charging him with harassment and criminal contempt in the second degree.

---

[1] In 1961, the legislature created a temporary commission to study and eventually recommend complete revisions of both the Penal Law and the Code of Criminal Procedure. The commission, officially named the New York Temporary Commission on Revision of the Penal Law and Criminal Code, was composed of nine members, appointed in equal thirds by the Governor, the Speaker of the Assembly, and the Majority Leader of the Senate. During the course of its decade-long work, the commission became known as the "Bartlett Commission," after its Chair, Assembly Member Richard J. Bartlett, who later served as Chief Administrative Judge of the Courts of New York State and Dean of Albany Law School (*see generally* Herman Schwartz & Richard Bartlett, *Criminal Law Revision Through a Legislative Commission: The New York Experience*, 18 Buff L Rev 213 [1969]).

After a four-day adjournment—granted so the People could obtain a supporting deposition—the parties reconvened and the court proceeded to convert part of the complaint into an information, notwithstanding the presence of several errors in the accusatory instrument. Although the first page of the attached Domestic Incident Report listed the date (correctly) as "1/25/15," the second page mistakenly dated the statement as having been given a year prior—"1/25/14" instead of "1/25/15." In addition, the handwritten narrative on the first page of the report was only partially legible and partially intelligible. Germane to this appeal, the accusatory instrument incorrectly alleged that the crime occurred "on or about October 25, 2015." That date, which would not occur for another nine months, was patently incorrect. That date also fell after the expiration of the order of protection, meaning that the accusatory instrument facially failed to state facts showing a violation of the order of protection.

When defense counsel objected that the accusatory instrument included the wrong date, the court responded: "that's clearly a typographical error which the People can move to amend at any time." Over objection, the court then granted the People's oral motion to amend the date of the incident. Mr. Hardy subsequently pled guilty to criminal contempt, as charged in the amended accusatory instrument. He received a ninety-day jail sentence.

On appeal, Mr. Hardy challenged the facial sufficiency of the original accusatory instrument and argued the court impermissibly granted the People's motion to amend the instrument (63 Misc 3d 6, 8 [App Term 2019]). The Appellate Term, after noting that "case law has been inconsistent in this area" (*id.* at 9), ultimately upheld the amendment. The court first determined that:

> "notwithstanding the fact that CPL 100.45 does not authorize factual amendments of informations and complaints, the common-law rule of *Easton* still governs, and, thus, courts retain the inherent authority to permit factual amendments to these types of instruments pursuant to the guidelines set forth in *Easton*"

(*id*. at 11-12).  Applying *Easton*'s rule, the Appellate Term concluded the amendment did not "surprise or prejudice" Mr. Hardy because it rectified a clear "typographical error of which defendant should have been aware" (*id*. at 13, quoting *Easton*, 307 NY at 338).  A Judge of this Court granted leave to appeal.


II.

The People agree that the original misdemeanor complaint was facially insufficient, and that Mr. Hardy could not have been prosecuted on it.[2]  Therefore, the question is whether the court had the authority to amend the date to create a valid instrument.  Our decision in *Easton*, if it was not displaced by the CPL, may well have answered that question.  The facts in *Easton* are quite like the facts here.  Mr. Easton was arrested on December 17, 1952 for driving while intoxicated.  The arresting officer mistakenly recorded the year as 1953, unintentionally charging Mr. Easton with a violation occurring a year into the future (*Easton*, 307 NY at 338).  The error was not discovered until the eve

---

[2]  Mr. Hardy waived prosecution by information.  Although a misdemeanor complaint is subject to less stringent review than an information (*see People v Small*s, 26 NY3d 1064, 1066 [2015]), a complaint nevertheless must state all elements of a crime (*see People v Fernandez*, 20 NY3d 44, 47 [2012]) and "provide reasonable cause to believe that the defendant committed the offense charged" (CPL 100.40 [4] [b]; *accord People v Afilal*, 26 NY3d 1050, 1052 [2015]).  Here, the erroneously charged future date rendered the instrument insufficient for failure to charge a crime under either standard.

of trial, at which point the trial court permitted the People to amend the instrument to correct the clearly incorrect date.  On appeal, we upheld the amendment, explaining that because

> "the correction of the date occasioned [Mr. Easton] no surprise or prejudice . . . what could have been effected by the preparation of a new information was properly accomplished by amendment of the one already on file. There was neither reason nor necessity for another piece of paper"

(*id*).  *Easton* established a clear rule:  factual amendments to informations were permitted provided the amendment did not surprise or prejudice the defendant.  While the content of *Easton*'s rule is clear, the source of its holding is not.  *Easton* is silent as to whether its rule derives from the Code of Criminal Procedure or the common law; it mentions neither explicitly.[3]  In this case, the source of *Easton*'s holding does not change our analysis,[4] and

---

[3] Inspection of the briefs in *Easton* reveals that neither party there presented or disputed any common-law theory for the amendment.  Instead, both the People and the defense briefed the issue as one of pure statutory construction—both parties argued that Section 62 and 293 of the Code supported their position.

[4] Because the Court in *Easton* did not disclose the basis for its ruling, and because *Easton* can read as either a statutory, common-law, or compromise decision, it would be inappropriate to charge the legislature with specific knowledge of the source of *Easton*'s holding.  Therefore, while we presume the legislature was aware of the content of *Easton*'s rule at the time the CPL was enacted, we do not presume the legislature understood *Easton* to be either a statutory or common-law decision.  Furthermore, as explained below, the Bartlett Commission plainly recommended that all accusatory instruments, including complaints and informations, be amendable under specified circumstances.  The legislature deliberately struck that language as to those two forms of accusatory instruments from a provision permitting amendment under what the dissent claims was the preexisting common-law rule.  The legislative excision and detailed statutory scheme for amending accusatory instruments evidences the legislature's clear intent to forbid factual amendments to complaints and informations.

the question we must ask is whether the legislature, by enacting the CPL, displaced or left undisturbed *Easton*'s rule that factual amendments to informations are permitted as long as there is no prejudice to the defendant.

III.

The text, structure, and legislative history of the Criminal Procedure Law all show that the legislature replaced *Easton*'s rule with a more finely-tuned set of rules governing amendments, tailored to each of the types of accusatory instruments it had defined in the CPL. CPL 200.70 does permit the kind of factual amendment the People sought to make here, but only for a select subset of accusatory instruments, and not for informations or complaints. As relevant to Mr. Hardy's case, the CPL provides, at most, that only the nonfactual, accusatory portion of an information can be amended.

One of the CPL's major innovations was the creation of a new taxonomy of accusatory instruments. Where the Code had differentiated between "indictments" and "informations," the CPL divided informations into five types of local criminal court accusatory instruments: informations, simplified informations, prosecutor's informations, misdemeanor complaints and felony complaints (CPL 100.05). In the CPL, the legislature also adopted rules for amending accusatory instruments; those rules varied by the type of instrument. As to indictments, the CPL retained the preexisting Code rule that indictments could not be amended if they might prejudice the defendant. However, the new CPL 200.70 added a limitation not present in the Code: indictments could not be amended, regardless of prejudice, if the amendment "change[d] the theory or theories of the

prosecution as reflected in the evidence before the grand jury." The legislature chose to subject prosecutor's informations to the same standards governing indictments (CPL 100.45 [2]). Superior court informations were treated in a similar fashion, although with an explicit difference. Section 200.70 permitted superior court informations to be amended as to "matters of form, time, place, names of persons and the like," but the legislature omitted the limitation that the amendments could not change the theory of the prosecution. Instead, the permissibility of such amendments turned on whether the defendant would be prejudiced. For complaints and informations, the legislature did not permit factual amendments for time, place, or names, as it had for prosecutor's and superior court informations. Instead, CPL 100.45 (3) permits the prosecutor to amend only the accusatory part of an information to add additional charges, provided those charges are supported by the original factual allegations.

The legislature's decision to exclude informations and misdemeanor complaints from the scope of section 200.70 is supported by a strong rationale. An information or a complaint—unlike an indictment or superior court information—commences a criminal action based on the allegations of someone who is not an officer of the court, and whose testimony has not been vetted by a grand jury.[5] Under those circumstances, it was

---

[5] In *People v Alejandro* (70 NY2d 133, 138 [1987]), we explained that compared with other accusatory instruments, the "distinguishing characteristic of an information" is "its use as the sole instrument upon which the defendant could be prosecuted . . . which prompted the Legislature to write in special restrictions applicable to informations . . . ." The legislature had a sound basis for subjecting informations to stricter pleading requirements than other instruments: "The reason for requiring the additional showing of a prima facie case for an information lies in the unique function that an information serves under the statutory scheme established by the Criminal Procedure Law. An information is often the instrument

reasonable for the legislature to decide that no one but an affiant should be permitted to alter the factual allegations previously sworn to an affiant.[6]  Moreover, where the legislature did permit the prosecutor to move to amend informations, it expressly limited such amendments to the accusatory portion only, and further required that the amendment to the accusatory portion must be "supported by the allegations of the factual part of such information and/or any supporting depositions which may accompany it" (CPL 100.45 [3]). Allowing amendments to the factual part of an information would render the restriction in CPL 100.45 meaningless.

*Easton* interpreted the permissibility of amendments to accusatory instruments under a substantially different statutory landscape, now defunct.  Despite the dissimilarities between the Code and the CPL, the People urge us to affirm the continued viability of *Easton*.  The text and structure of the CPL do not permit us to do so, nor does the application of our longstanding principles of statutory construction.  In the CPL, the

---

upon which the defendant is prosecuted for a misdemeanor or a petty offense. Unlike a felony complaint (CPL 180.10), it is not followed by a preliminary hearing and a Grand Jury proceeding. Thus, the People need not, at any time prior to trial, present actual evidence demonstrating a prima facie case, as with an indictment following a felony complaint" (*id*. at 137-38).  And we explained that in the case of misdemeanor complaints, as with informations, "the defendant does not have the protection of a preliminary hearing and Grand Jury action as with a felony complaint" (*id*. at 138 n 2).  The same considerations that motivated the legislature to tighten the pleading requirements for misdemeanor complaints and informations also apply to altering the factual allegations contained therein.

[6] The dissent's *bon mot*—"whether grounded in common law or common sense"— (dissenting op [Garcia, J.] at 10) cannot obscure the common sense underlying the legislature's decision to forbid amendments to accusatory instruments not emanating from a grand jury or an officer of the court where the change is unsupported by an affiant who can attest to the veracity of the correction.

legislature expressly stated which amendments to complaints and informations are permissible (nonfactual amendments) and expressly authorized date, time, and place amendments for only a select subset of accusatory instruments: prosecutor's informations, indictments, and superior court informations. The People's position would have us write into the CPL an authority to make factual amendments to informations that the legislature declined in two separate places to include (*see generally* McKinney's Cons Laws of NY, Book 1, Statutes, § 363 and the cases cited therein ["'(A) court cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the Legislature did not see fit to enact . . . . (A) court cannot, by implication, read or supply in a statute a provision which it is reasonable to suppose the Legislature intentionally omitted"]). Moreover, because we presume the legislature was aware of our decisional law at the time of enactment (*see Odunbaku v Odunbaku*, 28 NY3d 223, 229 [2016]), we must give proper effect to the legislature's decision to incorporate *Easton*'s "no prejudice" rule for some, but not all, of the types of accusatory instruments it had delineated. The CPL's rule for indictments, prosecutor's informations, and superior court informations is that date, time, and place errors may be fixed if the correction does not prejudice the defendant (*see* CPL 200.70). That is not the rule for complaints and informations.

The legislative history confirms our understanding of the plain language. The Bartlett Commission initially recommended versions of section 100.45 that would have included explicit authority for prosecutors to amend factual details in informations and misdemeanor complaints. Successive bill drafts concerning section 100.45 show that, right up until the legislative session before enactment, the Commission's proposed subdivision

stated: "The provisions of section 200.70 governing amendments of indictments apply to informations, prosecutor's informations and misdemeanor complaints" (1969 Proposed NY Criminal Procedure Law § 100.45 [2]).  However, the legislature ultimately selected only one of those instruments—prosecutor's informations—and rejected the Commission's proposal to include informations and misdemeanor complaints in CPL 200.70.  Particularly because the standard articulated in CPL 200.70 is *Easton*'s "no prejudice" standard, it is inconceivable that the legislature meant to apply that standard to misdemeanor complaints and informations by *striking* them from the sentence in the draft legislation applying that standard to other accusatory instruments.

The text, structure, and legislative history of the CPL, as well as a straightforward application of our canons of statutory construction, all demonstrate that the CPL does not permit the kinds of factual amendments once countenanced by *Easton*.  The CPL does provide its own pathway for correcting factual errors in complaints and informations, through the filing of a superseding accusatory instrument (CPL 100.50), not through a prosecutor's amendment of facts averred by someone else.  We recognize that the October 25, 2015 date in the accusatory instrument here cannot possibly be correct and that the correct date can be inferred from information outside the four corners of the accusatory instrument.  However, in evaluating the sufficiency of an accusatory instrument we do not look beyond its four corners (including supporting declarations appended thereto) (*People v Thomas*, 4 NY3d 143, 146 [2005]).  It is the People's responsibility to obtain a sworn statement with the correct factual allegations and proceed on a superseding instrument.

The People further contend that even if the amendment was improperly granted, Mr. Hardy forfeited his right to challenge the legality of the amendment by pleading guilty to the charges in the amended complaint.  Our precedent forecloses that result.  In *People v Harper*, we held that "if there is to be an amendment of an accusatory instrument within the scope of CPL 100.45 (subd 3), there must be strict compliance with the prescriptions of that section" (37 NY2d 96, 98 [1975]).  In *Harper*, the defendant stipulated at trial to an amendment adding two counts to the charges against him.  Notwithstanding the defendant's consent to be prosecuted on the amended instrument, we held that the defendant could still challenge the validity of the amendment on appeal, explaining that a "valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution" (*id*. at 99).  The same holds true here.  Mr. Hardy was charged with violating a two-year order of protection, but the date of the alleged incident fell outside the bounds of the order of protection.  Absent the challenged amendment, the accusatory instrument would have failed to state a crime.  Because the amendment implicates a fundamental defect and purportedly converted a facially insufficient accusatory instrument into a facially sufficient instrument, its legality presents a nonwaivable jurisdictional issue (*see People v Correa*, 15 NY3d 213, 222 [2010]; *People v Scott*, 3 NY2d 148, 152 [1957] ["(O)bjections to the jurisdiction of the court are not waived (by a guilty plea), nor is the objection that the information does not state a crime"]; *People v Van Every*, 222 NY 74, 77 [1917]).[7]

---

[7] The dissent stretches *Easton* far beyond its holding, contending that *Easton* "stands for the unquestionable proposition that correcting a mere typographical error in the date of the

IV.

The trial court granted the People's motion to amend the information because the amendment pertained only to "a matter as to date, time or place." As described above, the CPL authorizes such amendments for a select subset of accusatory instruments (*see* CPL 200.70; 100.45 [2]). That subset does not include misdemeanor complaints or informations, for which the CPL licenses amendments to the nonfactual portion of the accusatory instrument only (*see id*. at 100.45 [3]). Because the court lacked the authority to permit the amendment, the accusatory instrument—which failed to allege a crime occurring within the bounds of the two-year order of protection—was jurisdictionally defective (*see Alejandro*, 70 NY2d at 138). Accordingly, the order of Appellate Term should be reversed and the accusatory instrument dismissed.

---

crime—even one that as here would have made the crime impossible to commit as charged—does not render a facially-sufficient accusatory instrument jurisdictionally defective" (dissenting op [Garcia, J.] at 10). *Easton* said nothing about whether an illegal amendment constitutes a non-waivable jurisdictional defect because Mr. Easton preserved his challenge to the amendment and proceeded to trial. We concluded that under the law as it existed at that time, the amendment was permitted, and so we affirmed his conviction. Because the legislature, when replacing the Code with the CPL, contemplated permitting factual amendments to misdemeanor complaints but chose otherwise, we now reach a different result.

GARCIA, J. (dissenting):

Defendant waived prosecution by information, pled guilty to a jurisdictionally-sufficient misdemeanor complaint, and then appealed, challenging the procedure used by the court to amend a typographical error in the accusatory instrument. A plea, as we have

- 1 -

made clear time and again, "generally marks the end of a criminal case, not a gateway to further litigation" (*People v Hansen*, 95 NY2d 227, 230 [2000]). Not so in this case. Instead, the majority holding elevates the correction of a typographical error to the level of a jurisdictional defect, a status formerly reserved for errors "implicating the integrity of the process," not applicable to "less fundamental flaws, such as evidentiary or technical matters" (*People v Hightower*, 18 NY3d 249, 254 [2011]). In doing so, we reject not only our holding in *People v Easton*, but the wisdom of its warning that to sustain a "reversal of the conviction and hold impermissible an amendment made solely to correct an obvious typographical error in the information" would be to "exalt form over substance" and "enthrone technicality purely for its own sake" (307 NY 336, 338 [1954]). Accordingly, I dissent.

## I.

Some clarification is necessary with respect to the facts. On January 25, 2015, defendant entered the complainant's residence in violation of an order of protection. A police officer responded and observed the defendant inside the home. Defendant was charged with criminal contempt and harassment in a misdemeanor complaint that incorrectly listed the date of the charged offenses as "October 25, 2015"—a date nine months in the future—rather than "January 25, 2015." At arraignment the following day, the judge issued a full order of protection in favor of the complaining witness and adjourned

the matter to provide the People with the opportunity to produce a supporting deposition sufficient to convert the misdemeanor complaint to an information.[1]

When the proceedings reconvened five days later, the People presented two additional documents to the court. The first was an unsworn Domestic Incident Report that contained a narrative by a police officer and reflected the correct date of the incident. The second document was a short affirmation by the complaining witness, dated "1/25/14," describing the incident but without indicating the date it occurred. The court found that the complainant's sworn statement along with the original misdemeanor complaint would together satisfy the requirements of an information charging criminal contempt. It was in the context of converting the complaint to an information that defense counsel pointed out that the accusatory instrument listed the incorrect date of the incident. The court responded that the date was "clearly a typographical error which the People can move to amend at any time." Over defense counsel's objection, the court granted the People's motion to amend the complaint to "January 25, 2015" on the grounds that the amendment was "to date, time or place."[2]

---

[1] Without a waiver by defendant, a misdemeanor complaint must be converted to an information for the People to proceed with the prosecution (CPL 170.65 [1], [3]; *see People v Kalin*, 12 NY3d 225, 228 [2009]). A supporting deposition can be used to cure a facially insufficient accusatory instrument (*see* CPL 100.15 [3], 100.45 [3]), but one is not otherwise required (*see Kalin*, 12 NY3d at 228; CPL 100.40 [4] [b]).

[2] The fact that defendant objected here does not affect the outcome. If the process for correcting the typographical error is not a jurisdictional defect, the claim—whether preserved or not—would be forfeited by a guilty plea. If it is a jurisdictional defect, as the majority now holds, the defendant need not object and dismissal on appeal will nevertheless result.

At this point in the proceeding, the judge had concluded that the two documents—the original sworn statement of the arresting officer and the complainant's sworn statement—together constituted an information charging criminal contempt. Rather than have the People proceed by information, however, defense counsel, referencing an offer by the People of a six-month sentence, asked "would the Court be willing to consider anything less?"

The People responded:

> "[T]he Defendant and Complainant have a long domestic violence history, seven cases since 2005. In 2013 the Defendant pled to two counts of criminal contempt in the Second Degree taking sixty days. He has been rejected from [treatment] programs on the last case. He has been offered programs in the past and conditional pleas on the other case which he has failed to complete."

The court made a more favorable offer:

> "All right, so, I do see that he last got sixty days for violating an Order of Protection against this Complainant in 2013. So, I would give him ninety days for this contempt, which is half of what the People are offering."

Counsel immediately accepted the offer: "Your Honor, we do have a disposition." At the same proceeding, defendant waived prosecution by information, pled guilty to the criminal contempt charge in the misdemeanor complaint, and was sentenced according to the bargain struck with the court. There is no issue as to the voluntariness of his plea. Nevertheless, Defendant appealed, arguing that the court improperly granted the People's motion to amend the date, and that the unamended accusatory instrument was facially

insufficient.  Appellate Term rejected that argument and affirmed, relying primarily on this Court's decision in *Easton* (63 Misc 3d 6, 11-13 [App Term, 2d Dept, 11th & 13th Jud Dists 2019]).

The majority reverses, holding that the Criminal Procedure Law "displaced *Easton* and precluded prosecutors from curing factual errors or deficiencies in informations and misdemeanor complaints via amendment" (majority op at 2).  According to the majority, "[b]ecause the amendment implicates a fundamental defect and purportedly converted a facially insufficient accusatory instrument into a facially sufficient instrument, its legality presents a nonwaivable jurisdictional issue" (majority op at 11).  The majority holding expands our narrow range of fundamental jurisdictional defects so far as to now include the correction of a typographical error in the date of a misdemeanor complaint.

## II.

A guilty plea generally "marks the end of a criminal case," encompassing "a waiver of specific rights attached to trial . . . [and] a forfeiture of the right to revive certain claims made prior to the plea" (*Hansen*, 95 NY2d at 230).  A valid and sufficient accusatory instrument is a jurisdictional prerequisite and a defendant does not forfeit the right to challenge jurisdictional sufficiency by pleading guilty (*see People v Dreyden*, 15 NY3d 100, 103 [2010]).  The distinction between jurisdictional and nonjurisdictional defects "is between defects implicating the integrity of the process . . . and less fundamental flaws, such as evidentiary or technical matters" (*id.*; *Hightower*, 18 NY3d at 254).  As this Court has made clear, "[t]he test is, simply, whether the accusatory instrument failed to supply

defendant with sufficient notice of the charged crime to satisfy the demands of due process and double jeopardy" (*Dreyden*, 15 NY3d at 103).

In the past, we have found jurisdictional defects of a magnitude to survive a defendant's guilty plea when the factual allegations failed to demonstrate reasonable cause to believe that the defendant committed the crime charged (*see e.g. People v Dumas*, 68 NY2d 729, 731 [1986] [conclusory statements in misdemeanor complaint lacked evidentiary character to support sale of marijuana]; *Dreyden*, 15 NY3d at 103 [officer did not give any support in misdemeanor complaint to conclude that defendant possessed a gravity knife]), and when the facts recited in the accusatory instrument or supporting deposition did not state a crime (*see e.g. People v Case*, 42 NY2d 98, 100 [1977] [sum of facts in misdemeanor information failed to establish element of physical force]; *Hightower*, 18 NY3d at 254-255 [factual portion of misdemeanor information contained no basis for possessory element of petit larceny]).

Nothing remotely near the level of those jurisdictional errors occurred here. First, it is important to make clear that defendant pled guilty to the jurisdictionally-sufficient, amended, misdemeanor complaint. Although a misdemeanor complaint may be filed in order to obtain jurisdiction over a defendant, that instrument may not serve as the basis for a prosecution without an express waiver (*see Kalin*, 12 NY3d at 228). In order to go forward with the prosecution, the People must—as they were in the process of doing here—convert the misdemeanor complaint to an information (*see* CPL 100.10 [4], 170.65 [1]). "To meet the jurisdictional standard for facial sufficiency, a misdemeanor complaint need only set forth facts that establish reasonable cause to believe that the defendant committed

the charged offense" (*People v Smalls*, 26 NY3d 1064, 1066 [2015] [internal quotation omitted]). By contrast, an information must also set forth "nonhearsay allegations which, if true, establish every element of the offense charged and the defendant's commission thereof" (*Kalin*, 12 NY3d at 228-229; *see* majority op at 7 n 5 [quoting *People v Alejandro* (78 NY2d 133, 138 [1987]) for the proposition that the "distinguishing characteristic of an information" is "its use as the sole instrument upon which the defendant could be prosecuted . . . which prompted the Legislature to write in special restrictions applicable to informations"]). As we have repeatedly stressed, "an information must satisfy significantly more stringent facial sufficiency requirements than those applicable to a complaint" (*Smalls*, 26 NY3d at 1067). Where, as here, a defendant waives prosecution by information, "he or she declines the protection of [CPL 100.40 (1)], and the accusatory instrument must only satisfy the reasonable cause requirement" (*People v Dumay*, 23 NY3d 518, 522 [2014]). Therefore, the sufficiency of the accusatory instrument defendant pled guilty to is measured by the reasonable cause standard of a misdemeanor complaint (*see id.*; CPL 170.65 [3]).

At the time defendant waived prosecution by information and entered a plea to the charge, the misdemeanor complaint was facially sufficient. The typographical error as to the month the crime occurred had been fixed and the correct date now appeared. With that correction, the accusatory instrument set forth facts that established reasonable cause to believe defendant committed the charged offense and provided the defendant with the required notice of the crime (*see Dreyden*, 15 NY3d at 103).

In an effort to characterize defendant's claim as one asserting a jurisdictional defect not forfeited by his guilty plea, the majority looks behind the facial sufficiency of the misdemeanor complaint at the time of the plea and examines the process for amending the typographical error in the date (*see* majority op at 1-2). But that amendment process—an alleged statutory violation—was not a fundamental jurisdictional error, and any challenge to it was forfeited by the guilty plea (*see People v Konieczny*, 2 NY3d 569, 575 [2004]).

Defendant and the majority rely on this Court's decision in *People v Harper* (37 NY2d 96 [1975]) as support for the conclusion that a jurisdictional defect may be brought on by an ineffective amendment. However, in *Harper*, the information was amended during trial to add two counts of menacing involving victims not covered in the original menacing count (*id*. at 98-99). Defendant was convicted of the two added counts and acquitted of all remaining counts (*id*. at 99). Adding counts based on different facts after trial commences raises double jeopardy and notice issues not remotely relevant here. For this reason, in *Harper* the Court began its analysis by noting that "[i]n the present case there was a trial rather than the entry of a plea" (*id*.). The rule in *Harper* does not apply where, rather than adding new charges during trial, the court permitted the People to correct a typographical error in a misdemeanor complaint prior to a guilty plea.[3]

---

[3] The majority's citation to two cases involving classic examples of jurisdictional defects, *People v Scott* (3 NY2d 148, 152 [1957] [complete absence of a verified information]) and *People v Correa* (15 NY3d 213, 222 [2010] [allegation that the court lacked subject matter jurisdiction to try the case]) serves only to place in stark contrast the technical defect at issue here (majority op at 11). Reliance on *People v Van Every* (222 NY 74 [1917]; *see* majority op at 11) is more surprising still given this Court's statement in *Easton* that *Van Every*, cited by County Court as the controlling authority in reversing defendant's

The People argue that any flaw in the amendment process should be considered a technical defect, relying on our decision in *Easton*, which involved facts more analogous to the present case. In *Easton*, the arresting officer filed a misdemeanor information charging the defendant with driving while intoxicated on a date one year after defendant was arrested (307 NY at 338). On the eve of trial, the court permitted a factual amendment to cure the typographical error over defendant's objection that the information was "defective as a matter of law" (*id.*). Defendant was convicted and he appealed. County Court reversed the conviction, holding that the Code of Criminal Procedure in effect at the time did not permit the amendment and the typographical error in the date made the information "void and fatally defective" (127 NYS2d 163, 164 [1954]). The court held that "[t]he rules of procedure in criminal cases cannot be treated with the same elasticity as the rules of pleading in civil actions" because "[t]he principle of adherence to our established rules of criminal procedure greatly outweighs the importance of any individual case" (*id.* at 165-66).

This Court reversed and reinstated the conviction, explaining that although a conviction could not be upheld if it was obtained "without jurisdiction, even though the record evidence stamps defendant plainly guilty," amending the typographical error in the date did not rise to that level (*Easton*, 307 NY at 338). Because the officer could easily have sworn out a new information with the correct date, "[t]here was neither reason nor necessity for another piece of paper" (*id.*). We upheld the conviction, despite an

---

conviction (127 NYS2d at 164), was "entirely inapposite, and defendant's reliance upon [it is] misplaced" (307 NY at 338).

amendment made to the information, on the eve of trial, over defendant's objection, and in apparent contravention to the language of the criminal procedure code.

At a minimum, *Easton* stands for the unquestionable proposition that correcting a mere typographical error in the date of the crime—even one that as here would have made the crime impossible to commit as charged—does not render a facially-sufficient accusatory instrument jurisdictionally defective.[4]  Therefore, defendant's claim that the statutory amendment process was not followed in this case was forfeited by his guilty plea. We should continue to apply *Easton*'s rule, whether grounded in common law or common sense, and affirm the order of the Appellate Term.

---

[4] This Court did not dispute County Court's holding regarding the applicability of the criminal procedure law, holding only that "decisions" dealing with amending indictments should not be relied upon in this context (*Easton*, 307 NY at 338-339).  Accordingly, given County Court's holding, *Easton* may be read as providing a common law basis for amending a misdemeanor information to correct a typographical error in the date *despite* any criminal procedure rule to the contrary.

RIVERA, J. (dissenting):

I am in full agreement with the majority's conclusion that defendant's challenge to the validity of the amendment to the accusatory instrument presents a nonwaivable jurisdictional issue reviewable by us on this appeal (majority op at 11). However, I would

affirm for the reasons explained by the Appellate Term (*see People v Hardy*, 63 Misc 3d 6

[NY App Term, 11th & 13th Jud Dists 2019]).

Order reversed and accusatory instrument dismissed. Opinion by Judge Wilson. Judges
Stein, Fahey and Feinman concur. Judge Garcia dissents and votes to affirm in an opinion
in which Chief Judge DiFiore concurs. Judge Rivera dissents and votes to affirm in a
separate dissenting opinion.

Decided October 15, 2020